[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 21 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 22 
This is an appeal in a negligence action from a judgment of the Hudson County Court of Common Pleas in favor of the plaintiff-respondent.
On the morning of December 12, 1944, the plaintiff's decedent husband left his home to report to work at the Continental Foods Plant in Hoboken. He carried his lunch and proceeded along First Street towards Washington Street where he customarily took a bus going north. Shortly thereafter he was struck by the defendant's bus which was making a right turn from First Street to proceed south on Washington Street. No one who testified at the trial actually saw the defendant's bus strike the decedent, although there were witnesses who described the surrounding circumstances immediately prior and subsequent thereto. From their testimony, including the justifiable inferences, the jury could reasonably find that the accident occurred in the manner hereinafter described.
At about 6 a.m. the decedent had reached the intersection of Washington Street and First Street and was about to cross Washington Street to wait for his bus. The morning was clear, *Page 23 
the street lights were illuminated, and the visibility was good. The defendant's bus had stopped on First Street at the corner of Washington Street to permit passengers to alight and to wait for a green traffic light. When the light changed to green, the bus started to make a right turn. In the meantime, the decedent had already started to cross Washington Street and was observed by one witness after having taken two or three steps from the curb. The bus driver did not sound his horn; indeed, he testified that he did not see the decedent or anyone crossing the street. While the turn was being completed, the decedent was run over by the front right wheel of the bus which quickly came to a stop. The decedent was immediately taken to St. Mary's Hospital where he remained until March 26, 1945; he was then transferred to St. Francis Hospital where he died on March 31, 1945. Thereafter the plaintiff, as administratrix ad prosequendum and as general administratrix, instituted her action for wrongful death and for injuries from the date of the accident to the date of death.
During the trial there was considerable medical testimony as well as testimony with respect to actuarial tables and the happening of the accident. After having denied defendant's motions for non-suit and directed verdict, the court submitted the issues of negligence, contributory negligence and damages to the jury which returned its verdict in favor of the plaintiff to the clerk in the absence of the judge. Thereafter the defendant obtained a rule to show cause why the verdict should not be set aside primarily on the ground that there was legal error in its taking and entering. Depositions in support of the rule were taken by the defendant to establish (a) what happened in the courtroom at the time the verdict was rendered, and (b) what happened in the juryroom prior thereto.
When the members of the jury returned to the courtroom the clerk asked them whether they had reached a verdict. The foreman replied, "We find for the plaintiff and against the defendant." He then sat down and said nothing further. The clerk then inquired as to what amounts had been found on the two counts of the plaintiff's complaint. The foreman then *Page 24 
rose and said that there was a matter of $1100 medical expenses and that the jurors were confused about the actuarial tables. One or two of the other jurors then conferred with the foreman, at which point he withdrew a paper from his pocket and read the sum of $14,958.58 on the first count, which he said was taken from the tables, and when asked for the amount on the second count he again referred to the paper and read the sum of $7,484.83, which he changed to $7,474.83. The paper from which the foreman read was never introduced in evidence and had been inadvertently handed to the jury with the exhibits in evidence. It bore notes made by the manager of the actuarial department of an insurance company who had testified for the defendant. After the completion of the foreman's remarks, the clerk repeated the verdict of $14,958.58 on the first count and $7,474.83 on the second count and concluded with the customary "And so say you all." At this point counsel for the defendant requested that the jury be polled but this request was denied by the clerk. The subsequent testimony of the jurors indicated that although the jury had agreed in favor of the plaintiff on the issue of liability, no agreement was ever reached as to damages, and the jury's return to the courtroom was to obtain further instructions bearing on damages.
The trial judge reached the conclusion that the verdict was "regularly and legally rendered by the jury and received and recorded by the clerk of the court" and accordingly discharged the rule to show cause. Thereupon the defendant appealed urging that error was committed (1) in rulings on the admission of evidence, (2) in the trial court's charge, (3) in the denial of the defendant's motions for non-suit and directed verdict, and (4) in the taking and entering of the verdict.
 1. Rulings on the Admission of Evidence.
A. Plaintiff complains that the report of St. Francis Hospital from the time of decedent's entry on March 26, 1945, to his death on March 31, 1945, was erroneously admitted. The *Page 25 
report was prepared under the supervision of Dr. Sciorsci, who testified with respect thereto, and contained entries by him as well as by other staff members, including interns and nurses. As Dean Wigmore has pointed out, such report might well be deemed admissible upon proper identification without the necessity of calling all of the nurses and interns who made the individual entries. 6 Wigmore, Evidence (3rd ed. 1940) § 1707; Opdykev. Halbach, 123 N.J. Law 123 (Sup.Ct. 1939). But cf.Cohen v. Bradley Beach, 135 N.J. Law 276 (E. A. 1947). However, we need not pursue this issue further since, in the light of other testimony properly admitted, there was nothing in the report prejudicial to the defendant. We are satisfied from our examination of the record that the report did not injuriously affect "the substantial rights" of the defendant and, accordingly, find no ground for reversal without passing on the alleged error in its admission. DeSantis v. Lange,137 N.J. Law 480 (Sup.Ct. 1948); Crager v. West Hoboken Transfer Express Co., 132 N.J. Law 547, 548 (Sup.Ct. 1945); DeFreitas v. Metropolitan Life Insurance Co., 131 N.J. Law 5, 8(Sup.Ct. 1943). See Rules 1:2-20, 4:2-6.
B. The defendant also complains that Dr. Sciorsci was permitted to testify as to the cause of the decedent's death as disclosed by an autopsy. Although another physician performed the autopsy, Dr. Sciorsci witnessed it, examined the tissues, and formed his diagnosis. Under such circumstances, his evidence was admissible. Furthermore, his testimony in this connection was not harmful to the defendant since it was merely in accord with the uncontradicted testimony of the physician who performed the autopsy.
C. Defendant asserts error in sustaining an objection to a question which asked its actuary witness to state how the jury, when they arrive at the dollar loss sustained by plaintiff, would "proceed to calculate the capital fund on the factors you have given us." The question was objected to on the ground that the pertinent factors had not been incorporated. The defendant could readily have satisfied this objection by changing the form of the question but chose not *Page 26 
to do so. In fact, a material factor had been omitted in the witness' prior testimony and the exclusion of the question in the form submitted was within the trial court's authority. In any event, no showing of prejudice appears.
 2. The Trial Court's Charge.
The portion of the court's charge which is complained of is as follows:
"* * * If he was at the corner ready to cross when the light was green he had the right of way over the bus and would have the right to assume that the driver would exercise proper care and caution for his safety. This would likewise be the law if the deceased had started to cross with the green light and was on his way across. In both of the latter events he would be under no duty to make further observation if it were reasonably safe for him to cross at the time he started to do so, unless the driver sounded his horn as the law required him to do, in the event that a pedestrian might be affected by such a turn. * * *"
The appellant contends that the foregoing language improperly relieved the decedent of his duty of care in crossing the street. A reading of the entire charge rather than the quoted excerpt discloses that the court, in clear language, instructed the jury that the decedent was under a duty to use due care, was not relieved of "the duty of looking out for his own safety," and that recovery was to be denied if the decedent was guilty of negligence which contributed to the accident. At the close of his charge, the court, pursuant to a request of the defendant, instructed the jury that,
"* * * if you find that had the decedent made a reasonably effective observation for his own safety, he would have discovered a situation of impending danger to him, which he could have avoided by a delay of a fraction of a minute or a slight detour; and if you find that he failed to make such observation for his own safety or that, having made such observation, he failed to act with due care for his own safety in the light of what that observation disclosed to him, then this plaintiff cannot recover, and your verdict must be in favor of the defendant for no cause of action."
We are satisfied from our reading of the entire charge that the legal principles, applicable under the evidence in the case, *Page 27 
were fairly presented to the jury and that the defendant suffered no harm from the language complained about; consequently error therein is not ground for reversal. See Lenz v. Public ServiceRailway Co., 98 N.J. Law 849, 852 (E. A. 1923); Niles v.Phillips Express Co., 118 N.J. Law 455, 462 (E. A. 1937);Middleton v. Public Service Co-Ordinated Transport,131 N.J. Law 322 (E. A. 1944).
 3. Denial of the Defendant's Motions for Non-Suit and Directed Verdict.
The defendant contends that the trial court committed error in denying its motions for non-suit and directed verdict on the ground that there was no negligence on the defendant's part and that the accident resulted from the sole or contributory negligence of the decedent. We are satisfied from the evidence in the entire case (see Beck v. Monmouth Lumber Co.,137 N.J. Law 268, 271 (E. A. 1948)) that there was sufficient evidence to call for a jury determination on the issues of negligence and contributory negligence. See Hyman v. Bierman,130 N.J. Law 170 (E. A. 1943); Lyons v. Volz,114 Atl. 318 (N.J.Sup.Ct. 1920) not officially reported. Under the facts in the case, fairly inferable by the jury, the decedent had the "right of way" (R.S. 39:4-32) and the bus driver was required, before making his turn, to see that such movement could be made in safety and that if a pedestrian might be affected by such movement, to "give clearly audible signal by sounding the horn." (R.S. 39:4-126.) Admittedly the driver gave no such warning and, indeed, did not see, though visibility was good, the decedent who had already started to proceed across the cross-walk with the green light. In contrast to the defendant's contention, the facts established more than the mere happening of the accident and the jury could reasonably find that the decedent was not negligent and that the accident resulted from the bus driver's negligence in failing to observe the decedent and sound his horn before making his turn. See Hyman v. Bierman, supra,
and Lyons v. Volz, supra. *Page 28 
 4. The Taking and Entering of the Verdict.
In the light of our determinations, no reversible error had been committed upon the submission of the case to the jury. Defendant's final contention, however, is that there was reversible error in the manner of the taking and entering of the verdict which has hereinbefore been described. Without passing upon the propriety of examining the jurors as to what transpired within the juryroom (see Peters v. Fogarty, 55 N.J. Law 386(Sup.Ct. 1893)), we have concluded from what transpired in the courtroom itself that the verdict, insofar as it pertained to damages, was improperly received and recorded. The foreman reported that the jury had returned a verdict for the plaintiff, then sat down and kept quiet. That determined the issue of liability in favor of the plaintiff and as to that there was no uncertainty or confusion. With respect to damages, however, there was serious uncertainty and confusion and although the clerk entered a verdict, which omitted the foreman's original statement including his reference to the sum of $1100 for medical expenses, and moulded it in proper form, his action in doing so exceeded his ministerial functions. Cf. Corn v. Kaplan,103 N.J. Law 628 (E. A. 1927). The situation was one calling for the trial judge's attention, but under the practice then prevailing, it was permissible for him to authorize the clerk to receive and record the verdict as rendered. See Sockolowski v. Olkowski,102 N.J. Law 50, 53 (Sup.Ct. 1925). This practice has been terminated by Rule 3:38-2 which provides that, "Every verdict shall be returned by the jury to the judge in open court."
We are satisfied that the interests of justice require that the jury's verdict be sustained insofar as it establishes liability, but that it be set aside insofar as it fixes damages. A venirede novo is awarded, confined to the issue of damages. *Page 29