12 N.J. Super. 102 (1951)
79 A.2d 64
ASTOR TSIBIKAS, PLAINTIFF-RESPONDENT,
v.
MAXIMILIAN MORROF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Reargued January 15, 1951.
Decided February 13, 1951.
*104 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Harry Kay argued the cause for the appellant.
Mr. Emil W.A. Schumann argued the cause for the respondent (Mr. Firovanti O. Miniutti, on the brief).
The opinion of the court was delivered PER CURIAM.
The defendant Maximilian Morrof, an attorney-at-law of the State of New Jersey, appeals from a judgment entered in the Hudson County Court in favor of his former client, the plaintiff Astor Tsibikas. An earlier phase *105 of the proceeding is reported in Tsibikas v. Morrof, 5 N.J. Super. 306 (App. Div. 1949).
In 1945 the plaintiff discussed with his friend and attorney, Mr. Paladeau, the prospects of having his mother-in-law and brother-in-law emigrate from Greece to the United States. Mr. Paladeau recommended that he consult the defendant who specialized in immigration matters. The defendant advised that arrangements could readily be made for the early entry of the mother-in-law but he did not know what could be done for the brother-in-law. Thereupon the defendant was retained to arrange for the mother-in-law's entry, received a fee of $250 and performed services.
In December, 1946, the brother-in-law, referred to as El, reached Norfolk, Virginia, as a stowaway, accompanied by Michael, another stowaway. Thereupon the plaintiff conferred with the defendant who told him that while he could not guarantee anything he thought he might be of help and his fee would be $1,500. The plaintiff paid this fee, apparently believing that it represented the full charge for handling El's matter although the defendant testified that it was to cover services before the appropriate administrative officials, including the Board of Immigration Appeals. The defendant then went to Norfolk and arranged for El's release on bail and his later surrender at Ellis Island pending administrative determination. In January, 1947, the plaintiff learned that Michael was about to be returned to Greece and, after conferring with the defendant, paid him a fee of $1,500 to handle Michael's case and thereafter Michael was removed from the S.S. Marine Carp which was then about to sail.
The plaintiff testified that early in February, 1947, the defendant called him and told him "everything was lost about Mike and El," the only way was to send them to Cuba, and the cost would be $1,000 for obtaining their visas. He further testified that on the following day the defendant told him that the $1,000 would be for temporary visas which would only assure their stay in Cuba for three months, but by paying $3,000 permanent visas could be obtained. Thereafter there was a conference at Mr. Paladeau's office which was attended *106 by the plaintiff, the defendant and Mr. Paladeau. The plaintiff testified, in effect, that after considerable discussion he agreed to pay $3,000 in escrow upon the understanding that the defendant would provide permanent visas before El and Michael left for Cuba, while in Cuba they would be provided with jobs for their support and would be "no burden" to the plaintiff, and they would be back in the United States within nine months. The $3,000 was paid to the defendant in cash and, although his testimony was confusing, he seems to have substantially acknowledged that the money was to be held by him in escrow pending his obtainment of permanent visas.
On February 10, 1947, the defendant was notified that the order of exclusion in El's case had been affirmed by the Board of Immigration Appeals and El and Michael were actually on the S.S. Saturnia which was sailing that afternoon. However, as the result of the defendant's efforts, the men were removed from the ship and awaited transportation to Cuba. On February 27, 1947, they left for Cuba by plane and at that time the defendant advised the plaintiff that although he obtained temporary visas he had been unable to obtain permanent visas. The plaintiff testified that the defendant told him he had nothing to worry about and the permanent visas would arrive in about nine days. In March, 1947, the plaintiff was called to the defendant's office, was told that El and Michael were in trouble in Cuba, it was necessary that the defendant go to Cuba, and his fee would be $2,500. The plaintiff testified that he refused to pay the defendant any additional sum or authorize him to use any part of the escrow fund of $3,000; the defendant testified to the contrary. The defendant used the fund, went to Cuba and upon his return, according to plaintiff's testimony, advised the plaintiff that he had "straightened everything out." El and Michael testified that they had never been in trouble while in Cuba, had never received any permanent visas and, as a result, had not been permitted to work there, thus necessitating expenditures by the plaintiff for their support. El left Cuba on December 27, 1947, and was permitted to enter the United States as the fiance of a veteran of World War II; on the basis of his subsequent *107 marriage he has obtained permanent residence status in the United States. Michael re-entered the United States as a seaman but never obtained legal status and is free on bail awaiting deportation.
In June, 1947, the plaintiff demanded return of the $3,000 fund. After the demand was rejected the plaintiff consulted his present attorneys and in due course they filed complaint against the defendant in the Hudson County Court. The first and second counts of the complaint sought recovery of the $3,000 plus interest, the first count alleging that the defendant had failed to perform his agreement with the plaintiff and the second count alleging that the defendant had obtained the $3,000 by fraudulent representations. The third count of the complaint sought, as consequential damages, recovery of the sum actually paid by the plaintiff for the support of El and Michael while in Cuba. The defendant filed an answer denying the plaintiff's claim and a counterclaim seeking recovery of additional fees for legal services rendered to the plaintiff. A lengthy trial was held and extensive testimony by the parties and their witnesses was taken. At the close of the case the defendant's motion for judgment was denied and the court permitted the plaintiff to amend his pleading to conform to the evidence.
In its charge the court set forth the two separate grounds, namely, breach of contract and fraud, upon which the plaintiff sought to recover the sum of $3,000 plus $1,950 expended to support El and Michael in Cuba. On the first ground the court submitted to the jury determination of the factual issues as to the terms of the agreement between the parties, whether it was breached, and whether the consequential damages of $1,950 were such as might reasonably be supposed to have been within the contemplation of the parties when the agreement was made. On the second ground, the court submitted the factual issues to the jury after expressing its understanding of the plaintiff's claim that the defendant made fraudulent representations to him and in reliance thereon he made the $3,000 payment. Similarly, the court submitted to the jury the factual issues relating to the defendant's counterclaim *108 for additional fees for services. In order to aid the jury in rendering its verdict, the court prepared a slip of paper bearing places for checkmarks to indicate the jury's separate findings for or against the plaintiff or the defendant on each of the claims in the complaint and the counterclaim. The jury's verdict was in the plaintiff's favor on the breach of contract count and similarly in the plaintiff's favor on the fraud count and it assessed damages which included, less minor credits, the sum paid in escrow by the plaintiff plus the sum expended for support of El and Michael in Cuba, with interest. Poll of the jury confirmed its verdict for plaintiff and thereafter judgment was duly entered. The defendant filed notice of appeal and supersedeas bond and the individual allegations of error set forth under the nine points in his brief (Rule 1:3-2(e)), as we understand them, will be considered.

I.
Under his first and second points the defendant attacks various evidential rulings of the trial court. He complains that evidence of the original discussions between the plaintiff and the defendant with respect to the mother-in-law's entry was improperly admitted; in the light of the issues being tried, we consider that the trial court acted within its discretion and committed no harmful error in permitting the testimony. Cf. Batura v. McBride, 77 N.J.L. 779 (E. & A. 1909). He further complains that certain questions on direct examination were permitted though leading (Williams v. Guerreri, 136 N.J.L. 60, 61 (Sup. Ct. 1947)), other questions on cross-examination were excluded on grounds of improper form, remoteness, or immateriality (Bosze v. Metropolitan Life Insurance Co., 1 N.J. 5, 10 (1948); Testa v. Metropolitan Life Insurance Co., 136 N.J.L. 9, 12 (Sup. Ct. 1947)), and a witness was permitted to testify on redirect examination as to his war record. On such evidential rulings the trial court must be given wide latitude to insure that proofs are presented in fair and orderly fashion and within reasonable bounds and there is no ground for reversal unless *109 it appears that the defendant's substantial rights were prejudiced thereby. Rule 1:2-20; Petrosino v. Public Service Coordinated Transport, 1 N.J. Super. 19, 25 (App. Div. 1948). In the instant matter we are satisfied from our examination of the entire record that there has been no such prejudice.

II.
Under his third point the defendant contends that the proofs were at variance with the original complaint and the lower court erred on refusing to dismiss the complaint and in permitting its amendment after the proofs had been completed. The original complaint alleged that the defendant had agreed to obtain permanent visas within nine days, whereas the plaintiff testified the defendant undertook to obtain the visas before El and Michael left for Cuba and when he failed to do so he assured plaintiff they would arrive in about nine days. Similarly, the allegation in the original complaint that the $3,000 was to be considered earned and payable upon the issuance of the visas, the obtainment of employment in Cuba for El and Michael, and the commencement of work on their return to the United States which the defendant represented would be effected within nine months, was somewhat departed from by the plaintiff's testimony hereinbefore outlined. These variances in no wise altered the basic issues and we find no error in the trial court's action denying the motion to dismiss and permitting amendment of the complaint. Cf. Evans v. Rosenberg, 1 N.J. 590, 596 (1949); Rule 3:15. The trial continued long after the testimony for plaintiff was complete and the defendant had ample opportunity to meet the changes. In the light of the primary controversy presented, they do not appear significant and we find no prejudice to the substantial rights of the defendant.

III.
Under his fourth point the defendant asserts that "there was no issue of fact for submission to the jury" and presumably *110 contends that he was entitled to a direction of judgment. This contention may be considered along with his assertions under points VI and IX that the jury was improperly permitted "to determine the legal sufficiency of the evidence" and its verdict was against the weight of the evidence. The testimony favorable to the plaintiff, together with the reasonable inferences therefrom, was ample to warrant the jury in finding the following facts: The plaintiff delivered to the defendant the sum of $3,000 upon the defendant's undertaking to obtain permanent visas for El and Michael before they left for Cuba, provide them with jobs for their support while in Cuba, and secure their lawful return to the United States within nine months. Although the time arrived when El and Michael were leaving by plane for Cuba the permanent visas had not been obtained but the defendant then assured the plaintiff that they would arrive in about nine days. They did not arrive and because of their absence El and Michael were not permitted to work while in Cuba. The defendant never fulfilled his undertaking to provide them with jobs and they were supported by the plaintiff who expended $1,950 in this regard. They never received permanent visas while they were in Cuba, were not returned to the United States within nine months, and their later return was not the result of efforts on the defendant's part. The plaintiff's demand for return of the $3,000 was refused and action was thereafter instituted for its recovery plus the $1,950 as consequential damages.
Upon the foregoing facts the plaintiff was entitled to recover the $3,000 on the basis of his asserted claim for breach of contract without regard to the additional allegation of fraud. And under the evidence the jury was properly permitted to find, as it did, that the expenditure for support was proximately attributable to the defendant's default in his undertaking and was recoverable as consequential damages which might reasonably be supposed to have been within the contemplation of the parties when their agreement was made. Wolcott, Johnson & Co. v. Mount, 36 N.J.L. 262, 271 (Sup. Ct. 1873); affirmed, 38 N.J.L. 496 (E. & A. 1875). Unlike the situation in Anderson v. Modica, 4 N.J. 383, 395 (1950), *111 the jury, under appropriate instruction from the trial court, made an independent finding in plaintiff's favor on his claim for breach of contract and consequential damages thereunder and the resulting judgment may properly be upheld without regard to alleged legal insufficiency of the proof required to support the claim grounded in fraud.

IV.
Under his fifth point the defendant contends that the trial court erred in declining to permit his business records in evidence. These consisted of note books bearing daily entries which he testified were made contemporaneously with the occurrences and in the regular course of his professional work. They might well have been admitted under the provisions of the Uniform Business Records as Evidence Act. R.S. 2:98-36; 9 U.L.A., p. 264 (1942). Cf. Waters v. King County Trust Co., 144 F.2d 680. (2d Cir. 1944); cert. denied, 323 U.S. 769, 89 L.Ed. 615 (1944); rehearing denied, 323 U.S. 817, 89 L.Ed. 649 (1944); 56 Harv. L. Rev. 458 (1942). However, their contents bore largely on the extent of his legal services and he was permitted to testify at great length as to entries which he considered material. Under these circumstances and in light of the jury's finding as to the agreement between the parties and the defendant's breach thereof, we consider that he was not prejudiced by the failure to admit the books in evidence.

V.
Under point VII the defendant asserts that the trial court's failure "to sufficiently clarify the facts and issues to the jury is prejudicial error." Presumably this is an attack upon the trial court's charge, although we find no pertinent requests or objections or the required reference in the brief to their omission. Rule 1:3-2(c). The defendant's objection at the close of the charge related primarily to his contention that the trial court should have instructed the jury that if *112 the verdict was for the plaintiff it should be either on the count relating to breach of contract or on the count relating to fraud, but not on both. Under point VIII of his brief this contention is again advanced with particular reliance upon the pretrial order which set forth that the parties had agreed to limit the trial to the issues of whether the plaintiff was entitled to recover upon his $3,000 claim for the reasons set forth in the first count "or" the second count plus the consequential damages sought under the third count. We have determined that there was no harmful error in this connection in view of the jury's independent finding, pursuant to the trial court's charge, that plaintiff was entitled to recover upon his claim for breach of contract plus consequential damages and our conclusion that the single judgment entered below may properly be sustained on this finding without regard to the allegation of fraud. In connection with the fraud claim we may note that the plaintiff seems to have departed somewhat from his position at the trial; apparently his present contention, as expressed at reargument on the appeal, is that when the defendant received his original $1,500 fee he made promises without intending to perform them and that these constituted fraudulent representations as to his state of mind (Roberts v. James, 83 N.J.L. 492, 497 (E. & A. 1912)), which induced the plaintiff's subsequent $3,000 payment. Assuming for present purposes that this contention, if supported by the testimony and the jury's finding, would sustain the award of damages, we nevertheless incline towards the belief that it is not sufficiently supported by the totality of the evidence in the record before us.
The judgment, in so far as it awards recovery in plaintiff's favor in the sum of $5,374.31 on the claim for breach of contract and consequential damages thereunder and denies recovery on defendant's counterclaim, is affirmed.