63 N.J. Super. 409 (1960)
164 A.2d 813
NELLIE C. WEBBER, PLAINTIFF-RESPONDENT,
v.
JAMES J. McCORMICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided October 21, 1960.
*412 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Robert F. Colquhoun argued the cause for appellant.
Mr. Jacob R. Mantel argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This case arises out of an intersectional collision between plaintiff's and defendant's automobiles. The county district court judge, sitting without a jury, granted judgment in plaintiff's favor in the sum of $450 for damage to her automobile under the first count *413 of the complaint, and $2,286.25, subsequently reduced to $2,000 on defendant's application for a new trial, as damages for her personal injuries under the second count, plus costs. Defendant appeals from that judgment.
Defendant urges several grounds for reversal and we shall consider them, together with the pertinent facts, in the order in which they are argued in his brief.
Immediately after the collision on July 4, 1957, plaintiff was removed to Overlook Hospital, where she remained until July 6 under the care of her personal physician, Dr. Eason. X-rays were taken at the hospital at his direction, and they became part of the hospital records. At the trial a Miss Henshaw, clerk in the Medical Records Department at Overlook, produced plaintiff's records. She had begun work at the hospital September 29, 1958, some 14 1/2 months after the accident. She testified she had been working in the record room continuously since then, had charge of the records and was familiar with them. She said these were original records, made by the doctors and nurses in the regular course of hospital operation, and that they had been filed in the record room. Examination of plaintiff's hospital records shows that Dr. Eason was the attending physician and had countersigned them.
The records were admitted in evidence over defendant's objection. He now contends this was error because the requirements of N.J.S. 2A:82-35 had not been fulfilled. That statute, identical with the provisions of section 2 of the Uniform Business Records As Evidence Act, provides that:
"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."
There is little New Jersey authority concerning the admissibility of hospital records. Gilligan v. International Paper *414 Co., 24 N.J. 230, 238 (1957); Petrosino v. Public Service Coord. Transport, 1 N.J. Super. 19, 25 (App. Div. 1948); and Opdyke v. Halbach, 123 N.J.L. 123 (Sup. Ct. 1939), throw no light upon our immediate problem. There can be no question that had Miss Henshaw been the record custodian at the time the records were made, her testimony would have constituted a sufficient foundation under the statutory requirements. The problem is that she was not employed by the hospital until more than a year after the accident.
A recent Missouri case construing an identical statute is in point. In Rossomanno v. Laclede Cab Co., 328 S.W.2d 677 (Mo. Sup. Ct. 1959), a physician's office record was introduced by a receptionist-clerk who had been in his employ only one month. The record had been made some six years before. She testified as to the practice in the doctor's office during her employment, including sufficient facts to justify admission of records made during her employment. She further testified that from the appearance of the record she produced, her assumption was that it was similarly prepared by the physician in the regular course of his practice at or near the time of the event. There was an objection to the admission of this record in evidence because she could not qualify as custodian under the statute, since she did not of her own knowledge know how the particular record came into existence. The court disagreed, holding that:
"We cannot escape the conclusion that a witness may be competent to identify a business record and testify to the mode of its preparation even though he was not employed in the `business' at the time the act, condition or event occurred or was recorded. The testimony of the witness as to the `mode of preparation' need not be based on personal knowledge. This is in keeping with the last clause of section 490.680 which provides that the record shall be competent `if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.' * * *" (Italics the court's) (328 S.W.2d, at page 683)
Thus, said the court, the offering witness may tell what he knows or believes, based on subsequently gained knowledge *415 concerning the circumstances of the record in question. It is then a matter of discretion for the trial court to determine if such testimony adequately supports the conclusion that the record in question constitutes an admissible business entry. The policy dictating such a holding is obvious. Otherwise, as the court noted at 328 S.W.2d 682, "a new employee, even a permanent custodian, would be incompetent to qualify for admission in evidence any records ante-dating his employment regardless of how many years he continued to work because he could never acquire the necessary personal knowledge." The Rossomanno case expressly overruled more restrictive earlier state authority.
The Missouri court's interpretation of the section is sound and in accord with the authorities who advocate liberal construction in favor of admissibility of hospital records. See 6 Wigmore, Evidence (3d ed. 1940), § 1707, p. 36; McCormick, Evidence, § 290, p. 609 (1954). Under the act the trial court has considerable discretionary power in determining whether "the sources of information, method and time of preparation" were such as to justify admission of the hospital records in evidence, and its ruling should not be disturbed except where there is a manifest abuse of discretion. Cf. Douglas Creditors Ass'n v. Padelford, 181 Ore. 345, 353-354, 182 P.2d 390 (Sup. Ct. 1947). We hold that Miss Henshaw's testimony justified the trial court's ruling that the general information given by her reasonably assured the reliability of the hospital records in question, and hence they were properly admissible. Moreover, Dr. Eason, who attended plaintiff within minutes after her admission to the hospital, testified fully as to the nature and extent of her injuries and the duration of her stay. This testimony was corroborative of the hospital record he had signed.
Defendant's reliance on the Pennsylvania case of Paxos v. Jarka Corp., 314 Pa. 148, 171 A. 468 (Sup. Ct. 1934), is misplaced. That case is inconsistent with and decided *416 five years before Pennsylvania's enactment of the uniform act. 28 Pa. Stat., §§ 91a-91d.
Defendant next contends that Dr. Eason should not have been allowed to read the X-ray report prepared by the Overlook Hospital technician because he was not identified or produced at the trial, and there was no proof of his qualifications. The report, which had been ordered by Dr. Eason, was part of the hospital records produced by Miss Henshaw. At the oral argument defendant's attorney conceded that if the hospital records were admissible, then the X-ray report was also admissible as a matter of course, so that it was not error to permit Dr. Eason to read it. Since we have held the hospital records admissible, the argument directed at the X-ray report falls.
There is, of course, no merit in defendant's contention that the technician's qualifications had to be proved before his report was admissible. The purpose of the Uniform Business Records As Evidence Act is to eliminate the necessity of calling, qualifying and interrogating each person who made individual entries. Petrosino v. Public Service Coord. Transport, above, 1 N.J. Super., at page 25. The rationale of the statute is that once a particular record is identified as having been made in the regular course of business, its inherent reliability outweighs the necessity (with its attendant difficulties) of producing the original entrants. There is no reason to treat an X-ray technician's report any differently than an intake report or temperature chart. The Overlook radiologist presumably makes his reports in the regular course of business, and they are attended with the same guarantee of impartiality and reliability as entries made by internes or nurses. See McCormick, Evidence, § 290, p. 612 (1954); People v. Kohlmeyer, 284 N.Y. 366, 31 N.E.2d 490 (Ct. App. 1940).
The final argument made in connection with the hospital records is that plaintiff should have been precluded from introducing any positive X-ray findings of a fracture of the nasal bone because of her answer to question No. 6 *417 of the verified statement of claim required by R.R. 4:23-3(b). That question inquired as to whether X-rays had been taken and what they disclosed. Plaintiff answered that X-rays had been taken by the Overlook technician and were negative. Defendant claims this answer was misleading, that plaintiff was bound thereby, and the trial court erred in permitting contradictory proof of the existence of a nasal fracture.
Defendant overlooks the answer given to question No. 3 of the verified statement of claim. That question called for a detailed description of the nature, extent and duration of any and all injuries. The first injury listed was "fractured nose," followed by the description of other injuries. This answer fully apprised defendant that plaintiff was claiming a nasal fracture. Additionally, defendant knew of the fractured nose when he requested and received in advance of the trial the medical reports of Dr. Eason and Dr. Sly, a nose specialist, pursuant to R.R. 4:25-2. Under these circumstances, we agree with the trial court that defendant could not reasonably have been misled or surprised by plaintiff's claim of a nose fracture. He was therefore not prejudiced when the court permitted proof at variance with the answer to question No. 6.
At the trial it was explained that in answering question No. 6 plaintiff believed it referred only to a leg X-ray. An examination of the hospital technician's X-ray report reveals that in discussing the skull and nasal bones he reported "the presence of two fracture lines extending through the bridge of the nose." The entry under that part of the report dealing with the right leg is that examination showed no evidence of fracture. Plaintiff's mistake cannot be characterized as wilful, and her good faith is not challenged. In the absence of prejudice to defendant she could not be penalized by the trial court's refusal to receive any proof of a nasal fracture. Cf. Kronmiller v. Caruso, 57 N.J. Super. 331, 333-334 (App. Div. 1959).
Defendant's second main attack upon the judgment under appeal is that the trial court's determination was the *418 result of prejudice, passion, partiality and mistake, contrary to the weight of the evidence, and the damages awarded excessive. The first claim made under this head is that there was no proof of causal connection between the injuries claimed and the accident. The record abundantly demonstrates that such relationship existed. Plaintiff's testimony concerning the accident and the immediate and obvious injuries she suffered, corroborated by the testimony of the passenger in her car, together with the testimony of her doctor, established the causal relation. We observe that defendant never objected or made any motion in the cause that there was lack of evidence with respect to such relationship. The argument impresses us as an afterthought.
As to the claim that the verdict was excessive, defendant points to the trial court's reduction of the amount of the award as proof of its contention. We find that the evidence supports the amount of the award and that the trial court's reduction of the personal injury award from $2,286.25 to $2,000 on defendant's application to set the verdict aside as excessive was wholly within its prerogative.
Plaintiff is 60 years old. She spent three days in the hospital (the bill was not included in the award because of Blue Cross), sustained a fracture and bruising of the nose, and bruises and lacerations of the face, arms and legs. She was extremely nervous, having gone into mild shock after the accident and suffered substantial pain. She was under her physician's care for two or three weeks after leaving the hospital. Although almost completely recovered, she was still a little nervous and bore a cosmetic scar. It is not clear whether the nose fracture healed, but both experts testified there would be no complication.
The reduction of the verdict to $2,000 in lieu of a new trial as to damages is an example of the remittitur power of a trial judge. Defendant's contention that the action of the trial court in reducing the amount of the award without an option being given both parties to accept it or not, is not only novel but completely erroneous. It is neither *419 necessary nor proper to obtain a defendant's consent to the reduced amount in a remittitur. Fisch v. Manger, 24 N.J. 66 (1957), cited by defendant, does not stand for the proposition he advances. He cannot complain of the reduction. The right to complain was plaintiff's, and she is entirely satisfied with what the trial court did. That the reduction was only moderate is irrelevant, and defendant's argument that this was merely a tactic on the part of the trial judge to defeat his right to appeal does not deserve serious consideration.
A reading of the appendix and supplemental appendix shows there is no basis whatever for defendant's claim that the verdict was the result of prejudice, partiality, passion or mistake. We do not agree with his contention that the trial court was mistaken in its grasp of the testimony, or that its participation in the conduct of the trial exhibited partiality for plaintiff.
As for the argument that the verdict was against the weight of the evidence, the familiar rule is that on a review of any cause involving issues of fact not determined by a jury, the trial court's determination will not be disturbed unless, having given due regard to the opportunity of the trial judge to pass upon the credibility of the witnesses, it clearly and convincingly appears that the underlying verdict was the result of mistake, partiality, prejudice or passion. R.R. 1:5-4(b). The testimony was in sharp conflict. In making his decision, the trial judge prefaced his analysis of the testimony with his personal observations as to the attitude and demeanor of the witnesses. He concluded that defendant and his wife were lacking in credibility and refused to give their story any credence. On the other hand, he said he was very much impressed with plaintiff's testimony. That there was sufficient evidence to support his finding is clear from the record.
Finally under this point, defendant claims the trial court should have granted his motion for involuntary dismissal because plaintiff was guilty of contributory negligence *420 as a matter of law. His contention, basically, is that she made a faulty observation in not noticing his car in approaching the intersection, and generally was not exercising due care. The trial court expressly chose to believe plaintiff's account of the accident, and there is nothing therein to indicate contributory negligence as a matter of law. She testified she came to a full stop at the intersection, could see only about three car-lengths' distance to her right (the direction from which defendant came) because of the darkness and the obstruction of parked cars, saw nothing coming from either direction, started to "crawl" across the intersection, and was almost through it when her passenger warned her of danger, giving her time only to observe defendant's car, without headlights, about ten feet to her right, and to come to a stop before the impact. We find nothing of substance in defendant's analysis of the facts. And his contention on appeal that plaintiff's passenger denied she stopped before entering the intersection is a plain misstatement of the record. The passenger's testimony, omitted from defendant's appendix but reproduced in plaintiff's, was that she came to a full stop. The "crawling," both according to his testimony and plaintiff's cross-examination, was only after plaintiff had entered the intersection.
When defendant moved for dismissal at the close of plaintiff's case, plaintiff was entitled to every favorable inference that could possibly be given to her testimony and that of her witnesses. We find no error in the trial court's refusal to grant the motion.
Defendant's third main point is that the trial court erred in denying him a jury trial. The chronology of the county district court action shows that defendant had defaulted. He moved to set aside the default and for a trial by jury. The default was set aside by consent, but the jury trial denied. Defendant concedes this was in accordance with R.R. 7:8-2(d), and has no quarrel with the result. Several months later the county district court action was consolidated in the Superior Court, Law Division, with McCormick v. *421 Webber, an action brought by the present defendant against the present plaintiff and arising out of the same accident. A jury trial had timely been requested in that suit. The Law Division action was settled before trial, with the result that the present action was severed and remanded to the county district court. At that time defendant informally requested a jury trial. He now claims the denial of that request impaired his constitutional rights and was in derogation of R.R. 7:8-2(h) which reads:
"In the event that two or more actions are consolidated for trial, there need be only one demand for jury and only one jury fee shall be required."
That rule is obviously without application here.
Defendant argues that when the present case was consolidated with the Superior Court action, where there was to be a jury trial, he became entitled upon remand to a trial by jury in the county district court without the necessity of any further affirmative act. What this argument overlooks is that the right to a jury trial in the county district court action had been waived long before consolidation. The consolidation did not renew that right. It is only by happenstance that after consolidation the issues in the county district court action, being identical with those in the Superior Court action, were to be tried by a jury. The dismissal of the Superior Court suit by settlement put defendant, after the remand, in the same position he was in prior to consolidation. He has suffered no harm by being deprived of a contingent right which became non-existent when the contingency disappeared.
There was no formal demand for jury trial made after the remand, the only request being by telephone communication between defendant's counsel and the court. This procedure was improper. If defendant did seek a jury trial, he should have sought to obtain it by at least bringing on a formal motion at some time between the remand and the beginning of the county district court trial. As it is, he *422 went to trial without a jury and without any objection thereto. Having gambled on the outcome of the trial without a jury and lost, he may not now assert any violation of his right to a jury.
Finally, defendant argues that the summary closing of the record by the trial court violated due process of law by depriving him of a real and substantial right.
The record shows that at the conclusion of the testimony defense counsel summed up, and when asked by the trial judge if he was finished, agreed that he was. Plaintiff's attorney then summed up. The trial court proceeded to render its decision as to liability and then informed counsel it would consider the question of damages and advise them of the amount at a later date. Defendant's attorney then asked to be heard, and the court replied: "Not in the record, the case has been terminated." Defendant asserts he was thus substantially precluded from proceeding further in the cause. He relies upon Fitzgerald v. Finnegan, 6 N.J. Super. 371 (App. Div. 1950); Davies v. Botticher, 10 N.J. Super. 481 (App. Div. 1950); and Schwartz v. Rothman, 1 N.J. 206 (1948). None of these cases is relevant.
Defendant had ample opportunity to make his closing argument to the court. There is no reason why, after the court had considered the evidence and the arguments and delivered its finding, it should be required to listen to further argument.
An attorney may not argue his case outside the regular time set apart for argument. He has no right to address the court or the jury on the law or the facts after the summations have been concluded, except by leave of the trial judge. 88 C.J.S., Trial, § 167, p. 333 (1955). The trial court did not go beyond its general discretionary power in refusing to hear further from defense counsel in the circumstances of this case. Any dissatisfaction with the court's decision was the proper subject of motion or appeal.
Furthermore, defendant makes no representation of what remarks he intended to make, thus leaving the entire matter *423 to speculation. If there was any abuse of discretion by the trial judge  and patently there was not  there is no attempt to show that such abuse was prejudicial. We agree with plaintiff that the accusations leveled by defendant's attorney against the trial judge under this point and elsewhere in the brief are not only unsupportable, but also, at the very least, in extremely poor taste.
A concluding word as to the appendix which defendant presented to this court. R.R. 1:7-1(f) requires that an appellant shall include "such parts of the record as are essential to the proper consideration of the issues, and which the appellant desires the court to hear, including such portions which the appellant reasonably assumes will be relied upon by respondents in meeting the issues raised." Defendant's appendix does violence to the rule. The testimony of plaintiff's passenger, an eyewitness to the accident and upon whom she relied for her case, is omitted entirely. Only one bit of testimony of the two officers who came to the scene of the accident is reproduced. The direct testimony of plaintiff's expert who testified on the property damage aspect of the case is omitted. So are certain parts of plaintiff's direct examination important to her case. We need not detail other omissions.
Because of defendant's failure to live up to the requirements of R.R. 1:7-1(f), plaintiff was obliged to print a separate appendix setting out those portions of the record which defendant should reasonably have assumed would be relied upon by her in meeting the issues he raised. The cost of printing this supplemental appendix will be charged against defendant.
Affirmed.