93 N.J. Super. 215 (1966)
225 A.2d 584
ELIZABETH CARROLL, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF WILLIAM M. CARROLL, AND ELIZABETH CARROLL, ADMINISTRATRIX OF THE ESTATE OF WILLIAM M. CARROLL, PLAINTIFFS-APPELLANTS,
v.
NEVINE HOUTZ AND KOFMAN'S, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1966.
Decided December 28, 1966.
*217 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Morris Brown argued the cause for appellant (Messrs. Wilentz, Goldman and Spitzer, attorneys).
Mr. Charles V. Webb, Jr., argued the cause for respondents (Messrs. Gaffey, Webb and McDermott, attorneys; Mr. Webb and Mr. Louis Ruprecht on the brief).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff Elizabeth Carroll, as administratrix and administratrix ad prosequendum of her *218 deceased husband, William M. Carroll, appeals from a judgment in favor of defendants, based upon a jury verdict of no cause for action.
Decedent's death followed a collision between a vehicle driven by him and a tractor-trailer owned by defendant Kofman's, Inc. and driven by Nevine Houtz, its employee, on Route 22, Mountainside.
At the trial plaintiff's evidence was to the effect that defendant's tractor-trailer had pulled out onto the highway from a diner and that it was so negligently operated and inadequately marked that decedent who was proceeding along the highway was unable to avoid a collision with it. Defendants denied negligence and charged contributory negligence. Houtz testified that the Carroll car struck him in the rear as he was driving easterly in the right (slow) lane of traffic. The trial judge submitted the issues of negligence and contributory negligence to the jury. In response to specific interrogatories the jury found both negligence on the part of defendants and contributory negligence on the part of decedent.
Plaintiff urges that the allowance into evidence over objection of a toxicological report made by an independent laboratory to the county physician of Union County and filed with his autopsy report was a violation of the hearsay rule and amounted to prejudicial error.
The facts bearing upon plaintiff's contention are not in serious dispute. The accident occurred at approximately 2 A.M. on October 7, 1963, and decedent expired soon thereafter. Notice of his death was duly given to the county physician, and on the afternoon of the same day Dr. David Schlein, one of the two assistant county physicians, performed an autopsy. As part of the autopsy, specimens of the blood and brain tissues of decedent were set aside for the purpose of alcohol analysis. Since Union County did not employ a toxicologist the specimens were forwarded to Edel Laboratories (Edel), an independent laboratory, for the purpose of a toxicological report. Edel's report, dated October 23, 1963, *219 was forwarded to the county physician and was placed in decedent's autopsy file in his office, where it remained until the trial. It showed that there was 0.0718% of alcohol by weight in the brain and 0.0920% of alcohol in the blood of decedent.
Although Dr. Schlein's autopsy report, dated October 7, 1963, recites the preparation and forwarding of the specimens to Edel, it contains no reference to Edel's subsequent findings. Dr. Schlein, who was the only physician called to testify on the point, stated that he had not seen the Edel report until the trial and did not know its contents.
Prior to trial, counsel for plaintiff was aware of the presence of the Edel report in the autopsy file and was familiar with its contents. There was no discovery by either side as to the nature of the tests utilized by Edel, and Brady, who signed the report, was not called as a witness by either side. The autopsy file was produced at the trial by plaintiff.
Defendants argue that the report was admissible (1) under the Uniform Business Records as Evidence Act, N.J.S. 2A:82-34 et seq.; (2) as a record of a chief county medical examiner made admissible by N.J.S.A. 40:21-30.10, or (3) as an official record excepted from the operation of the hearsay rule at common law. Barber v. Hochstrasser, 136 N.J.L. 76, 81-82 (Sup. Ct. 1947).
N.J.S. 2A:82-35 provides:
"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."
In Mahoney v. Minsky, 39 N.J. 208 (1963), the basic theory underlying the admissibility of such records was set forth as follows:
"* * * [R]ecords which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, *220 and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence. The last clause of the statute that the books should be accepted `if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission,' confers considerable discretion upon the trial judge. Webber v. McCormick, 63 N.J. Super. 409 (App. Div. 1960) * * *. Once that discretion has been exercised the holding will not be disturbed if supported by substantial even though conflicting evidence or inferences therefrom." (at p. 218)
The court then laid down the rule that:
"The guiding standards for the exercise of the discretion are set out in the clause [from the statute] quoted above. Once the proffered books are properly identified, are shown to have been kept in the regular course of business, at or near the time of the event in issue, and it reasonably appears that the sources of information, method and time of preparation were regular and routine, they ought to be admitted. * * * Ultimate decision as to their trustworthiness or credibility ought to be left to the jury." (at pp. 218-219)
Here no question is raised as to the identity of the report or that it was ordered in connection with the autopsy procedure. By statute deaths by casualty were required to be reported to the county physician. N.J.S.A. 40:21-26.6. He was required to "fully investigate the essential facts" and to perform an autopsy if in his opinion this course was necessary to determine the cause of death. In the event an autopsy was performed, in addition to rendering a medical opinion as to the cause of death, he was required to make a detailed description of his findings during the progress of the autopsy and to file his description, together with the conclusions drawn from the autopsy, in his office, in writing. N.J.S.A. 40:21-26.7. Dr. Schlein testified:
"Q. Dr. Schlein, in the performance of this autopsy, you were acting in the capacity of an assistant county physician or county medical examiner?
A. That is correct.

* * * * * * * *
*221 Q. And you stated on your direct examination that at the time of the autopsy, specimens of the blood and brain were sent to Edel Laboratories for studies of any particular nature, doctor?
A. This is a routine period [sic]. We send them down for alcohol and drugs.
Q. Alcohol and drugs?
A. Yes.
Q. And in sending this specimen to Edel Laboratories for analysis, in connection with alcohol and narcotics, I believe you said, that was done pursuant to your direction and instruction?
A. Yes, that is right.
Q. In other words, doctor, in order to complete the autopsy, you wanted to have a toxicological analysis of the blood and brain?
A. This is a requirement. This is a state requirement.
Q. Absolutely, doctor.
As is the requirement that the autopsy report which you prepared is filed in your office. Is that correct?
A. Filed in the medical examiner's office." (Emphasis added)
We incline to the view that the report in question came within the ambit of N.J.S. 2A:82-35 and was admissible as part of the county physician's records. While we find no case precisely in point, we are satisfied that such records came within the category which includes hospital and medical records, relevant portions of which, when properly authenticated, are generally held to be admissible. Webber v. McCormick, 63 N.J. Super. 409 (App. Div. 1960); Opdyke v. Halbach, 123 N.J.L. 123 (Sup. Ct. 1939); cf. Gilligan v. International Paper Co., 24 N.J. 230 (1957); Greenfarb v. Arre, 62 N.J. Super. 420 (App. Div. 1960), certification denied 33 N.J. 454 (1960). Such hospital records frequently contain X-rays and reports of various other tests and analyses made by persons other than the physician, intern or nurse who actually renders service to the patient. In Webber v. McCormick, supra, in holding that X-rays which were part of a hospital record were admissible without further proof, it was said:
"There is, of course, no merit in defendant's contention that the technician's qualifications had to be proved before his report was admissible. The purpose of the Uniform Business Records As Evidence Act is to eliminate the necessity of calling, qualifying and *222 interrogating each person who made individual entries. Petrosino v. Public Service Coord. Transport, above, 1 N.J. Super., at page 25. The rationale of the statute is that once a particular record is identified as having been made in the regular course of business, its inherent reliability outweighs the necessity (with its attendant difficulties) of producing the original entrants. There is no reason to treat an X-ray technician's report any differently than an intake report or temperature chart. The Overlook radiologist presumably makes his reports in the regular course of business, and they are attended with the same guarantee of impartiality and reliability as entries made by internes or nurses. See McCormick, Evidence, § 290, p. 612 (1954); People v. Kohlmeyer, 284 N.Y. 366, 31 N.E.2d 490 (Ct. App. 1940)." (63 N.J. Super., at p. 416)
We perceive no cause for holding that the same reasoning does not apply to analyses of body tissues and fluids. See Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (Sup. Ct. 1956); Dillow v. Young, 3 Ohio App.2d 110, 209 N.E.2d 623 (Ct. App. 1965), reversed on other grounds 6 Ohio St.2d 221, 217 N.E.2d 868 (Sup. Ct. 1966); Thomas v. Hogan, 308 F.2d 355 (4 Cir. 1962); cf. Nichols v. McCoy, 38 Cal.2d 447, 240 P.2d 569 (Sup. Ct. 1952); Iovino v. Green Bus Lines, 277 App. Div. 1002, 100 N.Y.S.2d 148 (App. Div. 1950); Missouri Pac. R.R. Co. v. Watson, 346 S.W.2d 640 (Tex. Civ. App. 1961). Thomas v. Hogan, supra, dealt with 28 U.S.C.A. § 1732, which provided that:
"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.
The term `business,' as used in this section, includes business, profession, occupation, and calling of every kind." *223 In holding that a record of a blood test for alcohol made in a Navy hospital was admissible notwithstanding that it indicated neither the maker nor the methodology of the test, the court there held:
"We do not agree that the entry, to be admissible, must speak, not only of the diagnosis or the result of the test, but must also state affirmatively the qualifications of the diagnostician or of the technician and the steps taken in running the test. We read the statute as supplying a presumption that diagnoses and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time. * * * [A] record entry of a commonly performed blood test would be admissible, while an entry of the result of a scientific test infrequently done might not." (308 F.2d, at p. 360)
If a report made by an employee technician who may no longer be employed there is admissible as part of a hospital's records notwithstanding the lack of prior proof as to his qualifications or the methods used by him, we perceive no reason why a similar record made by an independent technician who is available to testify, but is not called, may not be received in evidence. Here Brady, Edel's director who signed the report, could have been called by either party but neither elected to do so.
It was of no consequence that the report, when received, was not brought to the personal attention of Dr. Schlein or examined by him. As noted, it was intended that it be returned to the county physician's office and filed there.
No question was raised at the trial concerning the admissibility of Dr. Schlein's autopsy record itself. We hold that where, in connection with an autopsy, tissues and blood are submitted for testing and analysis, the reports of such tests, when made to the county physician and filed with his report, may be received in evidence where the requirements of N.J.S. 2A:82-35 are otherwise satisfied.
The autopsy was actually performed by Dr. Schlein as an assistant to the county physician, Dr. Ehrenberg. Approximately one month later Union County adopted the provisions *224 of chapter 182 of the Laws of 1944, which permitted transfer of the functions of the county physician to the chief medical examiner of the county and provided that the county physician then in office would hold the office of chief medical examiner for a fixed period after adoption of the provisions of the act, N.J.S.A. 40:21-30.1 et seq. At the time of the trial Dr. Schlein was actually serving in the capacity of assistant medical examiner. The conclusions reached above render it unnecessary to determine whether the report was also admissible under N.J.S.A. 40:21-30.10, which provides for the admissibility of records of the chief medical examiner.
While we hold that it was not error to admit the report in evidence, we are satisfied that even were this not so, plaintiff suffered no prejudice from its introduction. As noted, the amount of alcohol was small. Rather than bring into issue the accuracy of the report, plaintiff elected to establish by her own medical expert that the amount of alcohol shown, a trace, was of no significance. This testimony was unrebutted and was the only evidence as to the significance of the amount of alcohol found.
We perceive no merit to the remaining points urged by plaintiff. Consent on behalf of decedent to the preparation of the specimens and the making of the analyses was not a prerequisite to admissibility of the report. The performance by the county physician of his duties under N.J.S.A. 40:21-26.7 could not thus be made to depend upon the consent of others. Further, the provisions of N.J.S.A. 39:4-50.1 were intended to cover prosecutions for violations of N.J.S.A. 39:4-50 (operating a vehicle while under the influence of liquor) and did not apply to the tests here involved. Cf. State v. King, 44 N.J. 346, 357 (1964).
Nor did the court err in refusing to charge plaintiff's request which included that portion of N.J.S.A. 39:4-50.1(2) which provided, in effect, that no presumption would arise from the fact that the amount of alcohol in blood did not exceed 0.15% by weight. Laying aside the fact that the *225 cited paragraph was intended to apply to prosecutions under N.J.S.A. 39:4-50, we are satisfied that the charge, considered as a whole, fairly and accurately presented to the jury the issues involved and the applicable law. Ristan v. Frantzen, 14 N.J. 455, 461 (1954).
The judgment of the Law Division is affirmed.