285 P.2d 174

Charles A. MATTINGLY and Anne R. Mattingly, husband and wife, Appellants,

v.

Ida EISENBERG, individually, and Ida Eisenberg, Executrix of the estate of Harry Eisenberg, Deceased, Appellees.

No. 5938.

Supreme Court of Arizona.

June 21, 1955.

Charlie W. Clark, Laney & Laney, Phoenix, for appellants.

John M. Levy, Moore & Romley, Phoenix, for appellees.

PHELPS, Justice.

This is an appeal from a judgment in favor of Ida Eisenberg and Harry Eisenberg, her husband, plaintiffs-appellees, and against Charles A. Mattingly and Anne R. Mattingly, husband and wife, defendants-appellants, for personal injuries suffered by Ida Eisenberg as a result of the alleged negligent operation of an automobile by defendant Charles A. Mattingly, and from an order denying defendants' motion for a new trial. For convenience the parties will hereinafter be referred to as plaintiffs and defendants.

On November 25, 1952 at about 6:30 p. m. defendant Charles A. Mattingly was driving an automobile east on Thomas Road at its intersection with 16th Street and struck the plaintiff Ida Eisenberg near the

center of Thomas Road and east of the intersection of the east street line of 16th Street.

Plaintiff was walking in a northerly or northwesterly direction across Thomas Road at the time. There is a conflict in the evidence as to whether she was in or near the crosswalk along the east line of the intersection of 16th Street with Thomas Road provided for the use of pedestrians in crossing Thomas Road at that point, or whether she was some distance to the east thereof. It was dark at the time but the lights at the intersection were lighted and enabled persons in the use of said highway to see the surrounding area including other persons on the highway. Defendant says plaintiff was dressed in dark clothing and in one statement he said she was only 20 feet from him when he first saw her and that she was then near the center of Thomas Road. Immediately following this statement he said he saw her and applied his brakes at a point 15 feet west of the east intersection line of 16th Street and Thomas Road and that she was 30, 35, or maybe 40 feet east of the crosswalk on the east side of 16th Street. Other witnesses testified that she was either approximately in the crosswalk or that she was within five or ten feet thereof.

The complaint charges that he was at the time and place under the influence of intoxicating liquor. Defendant admits having had a drink. Two witnesses testified he told them he had taken two drinks just before leaving the office. Two witnesses testified he seemed to weave a little in his walking. Several witnesses on the other hand testified they would not have known he had had a drink if they had not smelled intoxicants on his breath, that except for being excited he appeared to be normal. A drunkometer test to which he voluntarily submitted showed a blood content of alcohol by weight of .238 percent.

Defendants have assigned five alleged errors upon which they rely for reversal. First they say that it was reversible error for the court to have given the following instruction:

"Section 54 of the Uniform Act provides that it is unlawful for any person who is under the influence of intoxicating liquor to drive or to be in actual physical control of any vehicle within this state. This section also provides that it shall be presumed that the driver was under the influence of intoxicating liquor if there was at that time .15 percent or more by weight of alcohol in the defendant's blood.

"If you find from a preponderance of the evidence that the defendant Charles Mattingly violated the foregoing provision of law then I instruct you that he was guilty of negligence and if you find that such negligence was the proximate cause of the injury sustained by Ida Eisenberg then your verdict must be for the plaintiffs and against the defendants."

The instruction is based upon section 66–156, 1952 Supp., A.C.A.1939, which creates a presumption in a prosecution for the offense defined in that Act where a blood, urine or breath test shows certain percentages of alcohol to be present.

[1] Plaintiffs contend that defendants' objection to the above instruction was not sufficiently specific to focus the precise nature of the alleged error. We cannot agree with this contention. Defendants pointed out that it violated the constitution prohibiting comment on the evidence and that the instruction was a comment on the evidence. To hold that the trial judge did not pinpoint the comment on the evidence to that portion of the statute creating the presumption of intoxication when a certain percentage of alcohol by weight is found to be present in the blood would constitute an unpardonable reflection upon the intelligence of the trial judge. The fact that the objection stated other grounds therefor which were untenable is immaterial.

We held in State v. Harold, 74 Ariz. 210, 246 P.2d 178, in a prosecution for driving while under the influence of intoxicating liquor that the above act was constitutional and we held in State v. Childress, 78 Ariz. 1, 274 P.2d 333, 337, where the defendant was similarly charged that the court violated no constitutional right of defendant in reading this statute to the jury. The court said:

"* * * In reading the statute the judge was performing his mandatory duty in instructing the jury upon the law of the case. (Citing cases.) * * *"

The court then continued:

"* * * To say that the reading of a pertinent statute in a criminal case constitutes a comment upon the evidence is itself 'a reductio ad absurdum'. The reading of a statute in nowise expresses the view of the judge on any evidence in the case. It is exclusively a statement of law. Therefore we hold that the instructions complained of do not constitute a comment on the evidence."

We do not recede one tittle from the rule laid down in these cases.

The primary question presented under this assignment is whether section 66–156, supra, is applicable to civil cases and as a secondary question, if it is not applicable, does it constitute a comment on the evidence for the trial court to instruct that said section

"* * * provides that it shall be presumed that the driver was under the influence of intoxicating liquor if there was at that time .15 percent or more by weight of alcohol in the defendant's blood"?

It will be observed from reading section 66–156, supra, that subsection (a) thereof makes it unlawful and punishable as provided in subsection (d) of the act for any person under the influence of intoxicating liquors to drive or be in actual physical con-

trol of any vehicle within the state. Subsection (b) thereof begins as follows:

"In any criminal prosecution for a violation of paragraph (a) of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions".

Subdivision 1 of subsection (b) provides in substance that if the alcohol content is 0.05 percent or less it shall be presumed that defendant was not under the influence of intoxicating liquor. Subdivision 2 provides that where the content is 0.05 percent or more but less that 0.15 percent by weight of alcohol in defendant's blood, no presumption arises that he was or was not under the influence of intoxicating liquor. Subdivision 3 provides that if the alcohol content is 0.15 percent or more it shall be presumed that the defendant was under the influence of intoxicating liquor.

It will be further observed that these presumptions according to the language of the statute, apply only in criminal prosecutions for driving or being in physical control of any vehicle while under the influence of intoxicating liquor. (The use of the word "vehicle" of course includes automobiles.) We therefore conclude that the above section of the statute is intended to create a rule of evidence in the prosecution of persons charged with driving an automobile while under the influence of intoxicating liquor.

We therefore hold that it constituted reversible error for the trial court to extend the application of the statute to an action for damages for personal injuries. McDonald v. Hamilton B. Wills & Co., 240 N.Y. 144, 147 N.E. 616, 43 A.L.R. 956. See also 43 A.L.R. 956 with annotations. Inasmuch as the statute has no application to civil cases or to any offense other than that defined in the act itself the instruction which in effect states that the presence of certain percentages of alcohol (by weight) in the blood of defendant created a presumption of intoxication was, we believe, a comment upon the evidence as much so as if the particular statute had never been enacted.

[3] It is not necessary that a statute be enacted to warrant the admission of evidence concerning the alcoholic content by weight in the blood as evidence of intoxication. In the case of State v. Duguid, 50 Ariz. 276, 72 P.2d 435, 439, this court sustained the conviction of the defendant upon the testimony of Dr. Goss who made an analysis of his urine which showed two milligrams of ethyl alcohol per cubic centimeter of urine. Dr. Goss, testifying in the case, stated that:

" 'There are four ordinary standards which we use to determine drunkenness, depending upon the amount of alcohol which we recover in the urine

or blood. This ranges from one to four or five milligrams per cubic centimeter. One milligram, a patient may be drunk, but decently so. Two milligrams, distinctly drunk. Three milligrams, usually drunk and disorderly. And four milligrams or more, dead drunk.' "

See also Lawrence v. City of Los Angeles, 53 Cal.App.2d 6, 127 P.2d 931.

According to statements in cases relating to the test made in this case approximately twelve states have passed statutes similar to ours. Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812, and in the case of Lawrence v. City of Los Angeles, supra [53 Cal.App.2d 6, 127 P.2d 932], it was said in a footnote thereto that:

"It appears to be the concensus of the medical profession that when the blood alcohol concentrate of the driver of an automobile is 0.15% (by weight) such fact is conclusive evidence that the driver is under the influence of alcohol." (Citing many publications in support thereof.)

The court said in its opinion:

" * * * Opinions of qualified medical doctors as to whether an individual was intoxicated or not predicated upon the percentage of alcohol in the individual's blood, though not conclusive, are admissible when there is a proper preliminary showing that the blood tests upon which such opinions have been predicated have been properly conducted. (Citing cases.)"

And in Kuroske v. Aetna Life Ins. Co. of Hartford, Conn., 234 Wis. 394, 291 N.W. 384, 388, 127 A.L.R. 1505, in an action for the recovery of insurance for the death of deceased under the provisions of a life insurance policy which provided for nonliability if death occurred by accident while insured was driving an automobile under the influence of intoxicating liquors, a test was made of deceased's blood and disclosed an alcohol content (by weight) by 0.25 percent, the court in discussing the case said while some states had enacted statutes making certain percentage (by weight) of alcohol in the blood stream prima facie evidence of intoxication, such statutes were not necessary to render that kind of evidence admissible in actions involving issues of intoxication. Such statutes, the court said

" * * * show definite trends toward the recognition of such tests and the effect that should be given to such evidence."

Wisconsin had no statute on the subject at the time.

The second assignment of error is based upon cross-examination of defendant by counsel for plaintiff concerning his knowledge of this particular act and especially concerning its creation of a presumption of intoxication where the alcoholic content by weight was 0.15 percent or more. Such cross-examination, of course,

constituted error under the circumstances. If the act had no application to civil cases as we hold here, the cross-examination of defendant upon his knowledge of the existence of such presumption when it did not in fact exist could under no theory be allowed. Because of the necessity of retrying this case we will consider assignment of error No. 3 for the guidance of the trial court on a retrial of the case.

 Assignment No. 3 was based upon the admission of the testimony of one George Phelps, a police officer, who arrived at the scene of the accident after it had occurred. The witness Phelps testified to the measurement of skid marks at the scene of the accident although not present when they were made. At least three witnesses, however, testified to witnessing the accident, heard the screeching of the brakes, saw the location of the automobile when the brakes were applied, observed its course and later watched the measurement thereof by officer Phelps. The testimony showed that no other skid marks were present and all the witnesses testified that they were freshly made. The witnesses who saw the accident said the brakes were applied near the center of the intersection of Thomas Road and 16th Street and veered slightly to the right which corresponded with the tracks measured by officer Phelps. There was ample evidence in the record to justify the witness Phelps in testifying to the measurement of the skid marks at the scene of the accident although he was not present when they were made.

Discussion of assignments of error Nos. 4 and 5 under the circumstances is unnecessary.

Judgment reversed and cause remanded for a new trial.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.