Patricia BACH, Executrix, etc., Plaintiff-Appellant,

v.

PENN CENTRAL TRANSPORTATION CO., Defendant-Appellee.

No. 73–2123.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1974.

Decided Aug. 23, 1974.

Richard M. Markus, Cleveland, Ohio, for plaintiff-appellant; Spangenberg, Shibley, Traci & Lancione, Cleveland,

Ohio, Donald S. McNamara, Columbus, Ohio, on brief.

Harrison W. Smith, Jr., Columbus, Ohio, for defendant-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The appellant, executrix of her husband's estate, brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., alleging that her husband's death was caused by appellee's negligence. She contends on appeal that erroneous instructions and rulings on evidence by the district court caused the jury mistakenly to find the decedent contributorily negligent to an excessive degree and also to return a damage award that did not fully reflect the decedent's future income. She therefore contends that she is entitled to a new trial.

James Bach, the decedent, was a railroad fireman for the appellee. On the day of his death he was a member of a five-man crew that picked up and dropped off cars at private commercial sidings in the Dayton, Ohio area. Approximately three hours after the fatal trip began, Bach left the train to use the restroom at a nearby service station. Rather than stop the train and wait for Bach to return, the conductor told him to wait for the train where he got off and that he would be picked up as the train returned over the same track on the way to the terminal. Witnesses who watched Bach return from the service station testified at trial that they saw him walk to the track, sit down on it and rest his head on his knees and arms. The train's whistle was sounded repeatedly as the engine approached, but Bach did not move from the track. He was struck by the train and killed.

The jury found that both the railroad and Bach were negligent but concluded that Bach was 80% at fault in causing the accident. As a consequence, the jury's award of $128,000 was reduced to $25,600.

A significant question on the present appeal is whether Section 4511.19 of the Ohio Revised Code should have been referred to by the court. This statute provides that in any criminal prosecution for driving while under the influence of alcohol, a court may admit evidence of blood alcohol concentration, provided that if the test is by blood analysis, rather than breath or urine, the blood must be withdrawn by a physician or registered nurse within two hours of the alleged violation. The sample must be analyzed by a person licensed by the Ohio Department of Health. The statute also provides that if the blood alcohol concentration is .10% or more, there is a presumption that the defendant was under the influence of alcohol. If the concentration is less than .10%, no presumption exists.

Robert Martin, a toxicologist with the Montgomery County Coroner's office, testified for the appellee that as part of an autopsy on Bach, blood was withdrawn and analyzed for alcohol. The test showed that decedent's blood alcohol level was .135%. Appellant objected on the basis that the admissibility requirements of Section 4511.19 were not met: the sample was not withdrawn by a physician or registered nurse; it was withdrawn 17 hours after the accident rather than within the statutory two-hour period; nor was the sample analyzed by a person licensed by the Department of Health. The court overruled the objection and allowed the testimony.

The question of the applicability of Section 4511.19 again arose in the trial when the court without a request from either party gave the following instruction to the jury:

> The Legislature of Ohio in a statute unrelated to this case has determined that a concentration of ten hundredths of one percent or more by weight of alcohol in the blood withdrawn within two hours creates a presumption that such person was under the influence of alcohol. This is only a presumption

and it is not controlling upon you. It may be rebutted and you may also consider any other evidence presented to you such as the conduct, conversations or appearance of James Bach at or near the time of his death. The state of Mr. Bach's sobriety is a question of fact and like all questions of fact is within your exclusive province.

Appellant objected to the instruction, claiming that the presumption should not apply in civil cases.

██ We have been unable to find any Ohio case that discusses the applicability of Section 4511.19 to civil cases. Some other states have similar statutes which have been uniformly construed by the courts as having no application in civil cases. *E. g.* Wilson v. Coston, 239 Ark. 515, 390 S.W.2d 445 (1965); Mattingly v. Eisenberg, 79 Ariz. 135, 285 P.2d 174 (1955)[1]; Matthews v. All American Assurance Company, 226 So.2d 181 (La. App.1969); Carroll v. Houtz, 93 N.J. Super. 215, 225 A.2d 584 (1966). None of these decisions contains an extended analysis of the reasons the statute cannot be utilized in civil trials. Rather the courts have simply followed the literal wording of the statutes and have assumed that specific language would have been employed had the legislatures intended the statutes to apply in civil cases. Absent Ohio case law on the subject, we feel that a federal court sitting in that state should be governed by the wording of the statute without attempting a more expansive interpretation, thus limiting its reach to criminal proceedings.

██ Was the court's charge with respect to the Ohio statute reversible error? We think it was. Admittedly, there is some ambiguity in the instruction. The court stated that the statute was "unrelated to this case." The appellee stresses this language and argues that, whatever the reason the court had for giving the charge, it was clear from its wording that it did not apply in this case. To us, this argument is not persuasive. When the entire instruction is read, the words "unrelated to this case" are hardly sufficient to remove from the minds of the jury that the Ohio legislature had adopted a statute predicated upon its conclusion that a concentration of ten hundredths of one per cent or more of alcohol in the blood of a person gives rise to a presumption that such person is under the influence of alcohol. The error was only compounded when the court proceeded to state that "this is only a presumption and it is not controlling upon you. It may be rebutted and you may also consider any other evidence presented to you . . . ." If the statutory presumption was inapplicable the jury may well have wondered why the statute was referred to at all. If no statutory presumption existed, why was the jury advised that it was only a presumption which could be rebutted?

Appellee also points to the portion of the instruction that for the presumption to exist, the blood must have been withdrawn within two hours. Since in this case the blood was not withdrawn until 17 hours after Bach's death, it is surmised that the jury would not have applied the presumption and that the error was therefore harmless. Whether the jury did in fact construe the charge as stating that a rebuttable presumption existed in the case under Ohio law cannot of course be known to an absolute certainty. It can be said with considerable confidence, however, that the jury at least must have been confused. As it was error to give the charge and as it was at best confusing and misleading, we are not prepared to say that it was harmless. Where an erroneous instruction goes to the heart of an important issue in a case and is capable of leaving the jury with a false conception of the law, the risk of prejudice is unacceptably high.

---

1. The Arizona statute was subsequently amended to provide a presumption in civil cases. Thompson v. Bryson, 19 Ariz.App. 134, 505 P.2d 572 (Ariz.1973).

■ As we have already said, the appellant argues that even though the presumption in Section 4511.19 does not apply in civil cases, the procedures contained in the statute for analyzing blood must be met before evidence of blood alcohol concentration may be introduced. This argument becomes irrelevant in view of our conclusion that the statute is inapplicable in civil actions. Aside from statute, evidence of blood alcohol concentration in appropriate cases should be received like any other expert testimony. The test procedures need not necessarily conform to those described in the statute, but they must accord with good practice in the field to assure reliable results. *See* Lawrence v. City of Los Angeles, 53 Cal.App.2d 6, 127 P. 2d 931 (1942). Similarly, expert evidence would be admissible for interpreting the results—for describing the physical and mental condition of a person with a given blood alcohol concentration. Lawrence v. City of Los Angeles, *supra.*

One more issue regarding Bach's alleged use of alcoholic beverages remains. Appellee read to the jury, over appellant's objection, portions of the deposition of the brakeman, one Mays, who stated that Bach had told him that he had gone on a drinking spree while in Cincinnati on Thursday evening. Also, Mays testified that on Saturday afternoon, the day of the accident, Bach had made some vague references to Wild Turkey bourbon—references which fall short of establishing that Bach had had any contact with this brand of liquor. Appellant objected to the testimony regarding Bach's drinking in Cincinnati on Thursday because it was too remote in time to reflect his condition on Saturday. Similarly, appellant argues that since there was no evidence that Bach had been drinking the Wild Turkey bourbon on the day of the accident, any references to the liquor were irrelevent and prejudicial.

■■ Clearly, testimony tending to show that the decedent had been drinking before a fatal accident is generally relevant to the jury's consideration of contributory negligence. *See* Schlichter v. Port Arthur Towing Co., 288 F.2d 801 (5th Cir. 1961), cert. den. 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961); Hadley v. Baltimore & Ohio Rwy. Co., 120 F.2d 993 (3rd Cir. 1941). Yet the relevance of such evidence disappears if the drinking occurred so long before the accident that the alcohol could no longer have any effect on the decedent's conduct. The probative value of such evidence must be closely scrutinized to avoid the possibility of prejudice to the party charged with negligence. In this case, particularly in view of the testimony of appellee's expert Martin that any alcohol consumed by the decedent in Cincinnati on Thursday night and early Friday, would not still be in his blood at the time of the accident on Saturday evening, references to the so-called Cincinnati drinking should not have been received or should have been stricken. The same is true with respect to the ambiguous references to Wild Turkey bourbon. This evidence was much too remote and uncertain to be of probative value on the issue of contributory negligence.

■ As the evidence is convincing that the decedent, whether drunk or sober, was guilty of a high degree of negligence in sitting on a rail, knowing that the train was soon to return, his head down resting on his hands and knees, oblivious of this impending doom despite the train's continuous whistle and other sounds, can it be said that the court's errors in charging the Ohio statute and in admitting the challenged evidence of drinking were harmless? We think not. This is true primarily because under the F.E.L.A. the issue was not negligence alone but comparative negligence as between the decedent and the railroad. Although the evidence of decedent's negligence was strong, so too was the evidence indicating negligence on the part of the railroad. The crew was aware that they were to return and pick the decedent up at the point where he

had been left off. Despite such knowledge, there is evidence that inadequate precautions were taken to learn of the decedent's location or whereabouts. There is a justifiable inference from the record that the decedent was not seen on the track by any member of the crew although he could have been seen had the crew members exercised a greater degree of care. The jury's responsibility was to fix the degree of negligence of each party. We are unable to say that the erroneous rulings on the drinking issue were simply innocuous and played no part in causing the jury to find the decedent 80% negligent rather than, say, 50% or 60% or some other percentage less than 80% negligent.

■ Appellant sought at trial to introduce the testimony of an economist on the income that Bach would have made throughout the remainder of his working life. Based on his knowledge of the railroad industry and his estimate of future inflation, the economist was prepared to testify that the decedent's income would rise abruptly—so much so in fact that when he reached retirement age in the year 2002 decedent would have had an income of $49,413.12. This was in dramatic contrast to Bach's income of $13,496 in the last full calendar year prior to his death. The court denied admission of this portion of the economist's testimony.

In recent history inflation has been so persistent that it is difficult to conceive that the purchasing power of the dollar might remain constant through the year 2000. On the other hand, the predictive abilities of economists have not advanced so far that they can forecast with any certainty the existence and rate of inflation for the next thirty years. Limited use of economists and other experts may be appropriate in some cases to show that raises in income or promotions would most probably occur. *See* Senn v. Lackner, 91 Ohio App. 83, 100 N.E.2d 432 (1951), aff'd 157 Ohio St. 206, 105 N.E.2d 49 (1952). Yet testimony on the exact income that

the decedent would have received through the year 2002 is so speculative, in our view, that it is inadmissible.

■ We do not hold, however, that the jury may never consider inflation and future increases in income in determining damages. Ideally, the damage award should compensate appellant for the financial loss she will suffer as a result of the death of her husband. If a jury is not permitted to consider decreases in the purchasing power of money, appellant would be woefully damaged if inflation should continue at its present or at any other substantial rate. Some consideration of probabilities is inevitable in any fair award of damages. The court's role is to keep such extrapolations within reasonable bounds and insure that they conform to the evidence. Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705, 709–710 (5th Cir. 1967).

■ Even though no expert testimony on inflation and future increases was admitted, it was still error for the district court to charge the jury that it should not consider "future increases or decreases in the purchasing power of money." *Cf.* Willmore v. Hertz Corporation, 437 F.2d 357 (6th Cir. 1971). Inflation is a fact of life within the common experience of all jurors. Admittedly, if the jury considers this issue without expert testimony, their calculations will be even more imprecise. There is always a chance that the verdict may be too generous. But if jurors should be prohibited from applying their common knowledge of inflation in reaching a verdict, the party entitled to recovery could be grievously under-compensated. The court can always rectify an exorbitant verdict through its power of remittitur. See 6A Moore's Federal Practice ¶ 59.05 [3].

Appellant also objects to the court's charge that the jury should not consider the "effect of federal income tax because awards in F.E.L.A. cases are not subject to taxation." It is true that this Court has ruled in a number of cases that refusal on the part of the trial

court to give such a charge in cases awarding damages not subject to federal taxation is not reversible error. New York Central R. R. Co. v. Delich, 252 F. 2d 522 (6th Cir. 1958); Payne v. Baltimore & Ohio R. R. Co., 309 F.2d 546 (6th Cir. 1962), cert. den. 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051; and Hageman v. Signal L. P. Gas, Inc., 486 F.2d 476 (6th Cir. 1973). Other circuits, including the Second, the Fifth and the Eighth Circuits, have subscribed to a similar view. McWeeney v. New York N. H. & H. R. R. Co., 282 F.2d 34, 39–40 (2nd Cir. 1960) (en banc), cert. den. 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed. 2d 93; Cunningham v. Bay Drilling Co., 421 F.2d 1398 (5th Cir. 1970); Prudential Ins. Co. v. Wilkerson, 327 F.2d 997 (5th Cir. 1964); and Blue v. Western Railway, 469 F.2d 487 (5th Cir. 1972), cert. den. 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688. The Tenth Circuit, on the other hand, has indicated that while it would not be reversible error for the trial judge to refuse the charge, such a precautionary instruction would nevertheless not justify a reversal. Nichols v. Marshall, 486 F.2d 791 (10th Cir. 1973.)

 Notwithstanding our previous holdings that the refusal to give such a charge is not error, we are persuaded that neither is it reversible error in a personal injury action involving awards exempt from federal taxation for the trial judge in the sound exercise of his discretion to advise the jury affirmatively that its award will not be liable to federal income tax. In the present case, we are of the view that the charge was not improper. *See* Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1248–1252 (3rd Cir. 1971). The instruction does not require the jury to make complicated calculations nor does it necessitate speculation. It merely gives the jurors an accurate statement of the tax law which should assist them in reaching a realistic verdict.

The judgment of the district court is vacated and the action is remanded to that court for a new trial consistent with this opinion.