Herman D. **HENDERSON**, Plaintiff,

v.

S. C. **LOVELAND CO., INC.,**
**Defendant,**

v.

**UNITED STATES of America, Third-Party Defendant.**

No. 73-72-CIV-P.

United States District Court,
N. D. Florida,
Pensacola Division.

Dec. 12, 1974.

Fredric G. Levin, Pensacola, Fla., for plaintiff.

Dewey R. Villareal, Jr., Tampa, Fla., for defendant.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., John J. McLaughlin and Alfred Boudreau, Jr., Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., for third party defendant, United States.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

This cause is before the court as the trier of fact without a jury on the question of damages only, liability having been previously determined.

Evidence has been taken, arguments of counsel for the respective parties heard, and briefs or memoranda filed by the parties considered.

From the evidence it appears, and the court finds, that the plaintiff is totally and permanently disabled from gainful employment as a result of injuries received in the accident. The disability stems from a combination of partial physical disability and from brain injury resulting in an organic brain syndrome. While there was some testimony that he might be retrainable to some extent or might be able to do some types of monotonous work, the weight of the evidence supports the finding of total and permanent disability.

At the trial plaintiff submitted evidence of medical expense incurred in the amount of $8,236.27 and of lost earnings to date of trial in the amount of $19,090.00. These items of damages are not disputed by defendants. Under the evidence submitted, there is nothing sufficient to show there will be future medical expenses, or, if there will be, to support a damage award based thereon.

The real contest here is over the amount to be awarded for loss of ability to earn money in the future and for pain, suffering, mental anguish and loss of capacity for the enjoyment of life.

Respecting loss of ability to earn money, it was established at the trial that the plaintiff had a life expectancy at the time of trial of 46 years, 265 days, with a work expectancy of 41 years and that he would have earned in his employment for the year preceding trial $9,214.00.

Plaintiff presented as an expert witness, Dr. Ralph H. Blodgett, a qualified economist. He testified that over a past forty-one year period commencing with the year 1929, in this nation the average full time federal civilian employee had averaged a 9.7% annual wage increase. He assumed from this base such average increase would continue for the next forty-one years. He applied that to annual current earnings of $9,214.00 and arrived at a figure of over one million dollars that the average employee, having a life expectancy of plaintiff's and now earning that amount, would earn in the next forty-one years, together with the present value of retirement income such wage earner would receive from age 65 to the end of the projected life expectancy. Using a 5½% factor to reduce to present value, he arrived at the total figure of $355,388.00.

He testified that, had he not added for each year the 9.7% and had reduced to present value based on the approximate $9,200.00 figure that he used, the present worth would have been approximately $151,000.00 or $152,000.00.

Defendant Loveland objects to his testimony contending that the simplistic approach of projecting into the future the trend of the past is speculative and that, while some allowance must be made for the long-term trends, the court should not assume simply because a given rate has prevailed in the past it will continue to prevail in the future. Defendant United States also objects, contending that this testimony is too speculative. It contends also that, while a majority of the courts make no allowance for inflation, they will for an individual's chances for promotion, and points out that, from the evidence, plaintiff was a person of dull normal or low average intelligence immediately prior to the accident and had no chance of promotion.

Both defendants rely on cases arising in Sixth and Third Circuits in which expert testimony closely paralleling that offered here was rejected as too speculative and on a statement from Harper & James, The Law of Torts, contained in one of them.

The latest Sixth Circuit case, Bach v. Penn Central, 502 F.2d 1117 (6th Cir. 1974), while rejecting similar expert tes-

timony, pointed out it was not holding a jury might never consider inflation in future increase in income in determining damages. The case held the jury might consider such even though no expert testimony on inflation and future increases in income was presented saying in so doing:

"Inflation is a fact of life within the common experience of all jurors. Admittedly, if the jury considers this issue without expert testimony, their calculations will be even more imprecise. There is always a chance that the verdict may be too generous. But if jurors should be prohibited from applying their common knowledge of inflation in reaching a verdict, the party entitled to recovery could be grievously under-compensated. The court can always rectify an exorbitant verdict through its power of remittitur. See 6A Moore's Federal Practice. Paragraph 59.05[3]."

Plaintiff cites various authority to the effect evidence of inflation, price rises and future wage increases should be considered.

The most persuasive and, of course, the authority most binding on this court is found in Petition of M/V Elaine Jones, 480 F.2d 11 (5th Cir. 1973) and in other Fifth Circuit decisions referred to therein. In that case the court held the district court did not err by including in the computation of loss of future earnings a 2% per year cost of living increase. In its footnote discussion the court pointed out there was no logical or· practical distinction between an instruction as to the dollar's present deflated value and an instruction as to future inflationary trends.

Dr. Blodgett in his testimony did not attempt to show the future earnings of this plaintiff. His testimony was based on the average employee. His testimony did not even go to the question of the probable future earnings of an employee who, like this plaintiff, was employed as a warehouseman and forklift operator immediately prior to and at the time of the accident. His broad-gauged testimo-

ny cut across-the-board and averaged out all kinds and types of employees. Moreover, from his testimony, it is evident that the percentage of increase took into account various factors—promotions, pay increases, whether merit for continual service, or cost of living increases. His testimony encompassed a broad general trend through the past forty-one year period that he used and projected into the future for the average employee. To that extent, it stands the test of reasonableness and for its worth here is entitled to be considered.

But the problem is that, under the facts here presented, its value as evidence is slight.

■ It is uncertain on Dr. Blodgett's testimony whether a person with plaintiff's age and experience, in his occupation of warehouseman and forklifter, would be on a par, above, or below the level of the hypothetical average wage earner of Dr. Blodgett's testimony. Beyond that, however, the evidence here does not establish that the plaintiff was an "average" employee. To the contrary, it shows he was not. Before the accident, he was a person of below average intelligence—either "dull normal" or "low average intelligence" or "dull normal to low normal" intelligence depending upon the testimony of the particular doctors who expressed opinions concerning him. He had progressed in employment. From the evidence, however, it does not appear that he was of sufficient intelligence and ability to progress in the years to come to an employment level requiring more responsibility or greater skill and ability than that possessed by him prior to and at the time of the accident. The evidence here presented is insufficient to establish a probability that he would have in the future received increased earnings through promotions. To the contrary, under the evidence, it is more likely than not that he had achieved the level of his abilities and that he would not have received promotions to more responsible and higher paying work.

Dr. Blodgett's testimony, encompassing the broad range of an average employee and including all in his 9.7% projected annual increase, gives no breakdown of percentages for increases to be assigned to such factors as promotions, inflation, merit increases or cost of living increases. Thus, accepted as reliable testimony, it affords no real guide in trying to ascertain the extent, if any, this plaintiff's future earnings might be affected by any one or more of these factors, nor was there any other evidence presented concerning them, either by the plaintiff or by the defendants.

Dr. Blodgett, in response to questions, stated, in effect, that he was expressing no prediction concerning the plaintiff's future earnings if he continued in his position of forklifter and warehouseman and that his figures and calculations assumed the average wage earner in plaintiff's earnings position and his age would be given more responsibilities and different titles with consequent increased earnings in future years.

Dr. Blodgett's testimony is of evidentiary value here only to the extent it projects a probable earnings increase in the years to come for at least some cost of living increases because of inflation and insofar as it also establishes as a reasonable factor to be used in discounting to present worth a percentage figure of 5½%.

■ On the evidence before the court, plaintiff had been receiving periodic cost of living increases in his salary in years immediately preceding his accident. Absent that testimony, and Dr. Blodgett's, this court might, as the trier of fact, under the holding in *Bach, supra,* give consideration to the probability of continuing overall inflation and future increases in earnings because of this.[1] With that testimony it seems clear that this court should, and it does, find such as an established probability. That there is no testimony to guide the court renders its task in fixing the amount more speculative. But with the fact of future damage being established, uncertainty in the amount may be tolerated so long as the evidence lays a foundation enabling the trier of fact to make a fair and reasonable estimate of the amount of damage. 22 Am.Jur.2d, Damages, § 25.

Dr. Blodgett, in his calculations, used a 5½% discount rate.

■ In Blue v. Western Railway of Alabama, 469 F.2d 487 (5th Cir. 1972), the economist had testified that, notwithstanding higher interest yields on securities were available, 5½% was an appropriate interest rate that should be considered as available on safely invested funds over the period of the plaintiff's work life expectancy. The court held the district court was in error in charging the jury that the use of an interest rate based on safe securities by someone of plaintiff's financial experience and skill should be the rate used— the court said that the loss of future earnings, if any, through the use of an appropriate interest rate over the period of the remaining anticipated work life of the plaintiff should have been the proper charge. While undoubtedly in today's market plaintiff might invest in high grade securities and common stocks at a higher interest rate than 5½%, to this court, based upon both the *Blue* case and the testimony of Dr. Blodgett, an interest rate that is appropriate for the remainder of plaintiff's work life is the more conservative interest rate of 5½%. In this connection it is noted that no contention is made by the defendant that this is an inappropriate percentage rate, nor is any evidence otherwise here presented.

■ Dr. Blodgett's testimony established the present value of the approximate $9,200.00 income for forty-one years with apparently something included for retirement income at $151,000.00 or $152,000.00. In Petition of M/V Elaine Jones, *supra,* the use of a 2%

---

1 For judicial notice of economic and financial facts generally, see Jones on Evidence, § 2:34, et seq. (6th ed. 1972).

cost of living increase included in the consideration of loss of future earnings was approved. With that as a guide, the court concludes an allowance of $215,000.00 for loss of future earnings is appropriate and should be awarded.[2]

■ Defendants contend the award for future damages should be reduced by the estimated future income taxes. That is not the law in the Fifth Circuit where, as here, the annual estimated earnings are not clearly above the reach of the middle income scale. Petition of M/V Elaine Jones, *supra.*

■ Respecting damages for pain and suffering, mental anguish and loss of capacity for enjoyment of life, plaintiff's counsel presents a unit of time argument. The result he reaches in so doing emphasizes with clarity the necessity for consideration of the caveat contained in Baron Tube Co. v. Transport Ins. Co., 365 F.2d 858 (5th Cir. 1966), to the effect such argument is merely a method of presenting contentions and is not evidence.

Plaintiff, though not completely physically incapacitated as a result of the accident, nonetheless has suffered physical disability that will, from the evidence, cause some pain, suffering and loss of capacity for enjoyment of life for the rest of his life. A ringing in his ears is probably permanent, as well as are some physical impairments of his left knee and back that give him some limited motion ability as well as some pain. More importantly, he is now unable to do the things he formerly could do, and yet is able to remember how he enjoyed them. Prior to the accident he was an active man who, within the range of his ability, worked hard in his employment and in physical and other activities outside of his work and enjoyed them. Unable now to do those things, yet able to re-

member his enjoyment in them, his life pattern has been drastically changed. Formerly active, now he spends most of his days doing little more than sitting, watching television and leading a humdrum existence. With him there has been, from the evidence before this court, a great loss of capacity for enjoyment of life, compounding and increasing his pain, suffering and mental anguish.

Plaintiff's counsel, using the unit of time contention, suggested $5.00 a day as a realistic figure for physical pain and suffering. The trial came two and one-half years after the accident; at time of trial, plaintiff's life expectancy was 46 years, 265 days. Using 49 years or 17,885 days as a total at $5.00 a day, plaintiff's counsel arrived at a total of $89,425.00. Suggesting $2.00 a waking hour or $30.00 a day for the factor of loss of ability to enjoy life, Plaintiff's counsel arrived at an amount of $536,550.00. He points out amounts for these damages should not be reduced to present value. Thus, plaintiff's able counsel, in zeal of advocacy, arrives at and earnestly contends as appropriate an award in excess of $600,000.00 on this item of damages.

In Loftin v. Wilson, 67 So.2d 185 (Fla.1953), the court, in approaching and criticizing an award of $207,000.00 for pain and suffering, pointed out that such sum invested at 3% per annum would have yielded to the plaintiff annually an amount in excess of his annual earnings prior to his injury, leaving the principal amount intact at his death to pass to his heirs.

■ While the amount of damages for these items is not to be reduced to present worth, it is entirely proper to test a unit of time contention, which argues, by such an approach, for the

---

2. On the court's quick and rough calculation, adding the 2% increase each year to the $9,200.00 for the forty-one years would result in a present worth figure of approximately $50,000.00. As a precaution, at the court's request a local certified accountant has calculated the present value using 5½% of $9,200.00 with 2% added each year for forty-one years and arrived at a total of $207,755.00. To compensate for the lost retirement income and the few years after retirement age of 65, the amount awarded is increased to $215,000.00.

payment now of monies to be paid in the future for pain and suffering, particularly where, as here, there is a long life expectancy.[3]

Using a somewhat similar approach, $600,000.00 invested at 5½% would yield plaintiff annually $33,000.00. Such amount not only would be far in excess of the per diem figure suggested by plaintiff's counsel, but, at plaintiff's death, would leave intact the principal.

█ It is clear to the court from the evidence that plaintiff, possessing sufficient intelligence to know and appreciate the way he used to live and unable now to live that way and do the things he enjoyed doing and having also some pain and suffering and loss of ability to enjoy life, particularly from his knee and back injuries, has suffered extensive injury insofar as this element of damage is concerned, and that the injury in all probability will continue the rest of his life. The conclusion is reached that an amount of $150,000.00 is a reasonable amount to award him for these damages.

█ Damages in every case of personal injury must, of course, be based upon the evidence in that case and tested by probability and reasonableness. Particularly with reference to items such as pain and suffering, there is no standard for measurement of damages. National Bulk Carriers v. Hall, 152 F.2d 658 (5th Cir. 1945). It is at least helpful to check any amount awarded against the amounts awarded for such items in other reported decisions. With that in mind, counsel were asked to provide this court with citations of other discussions giving awards in similar cases and they have done so.[4]

Tested against those citations, the award here appears in range and reasonable in comparison with at least the great bulk of them. An exception appears to be Compania Dominicana v. Knapp, 251 So.2d 18 (3 D.C.A.Fla.1971), a case provided by plaintiff, though it is factually distinguishable from the instant case.

In summary, the amount of damages that should be awarded plaintiff is as follows:

| | |
|---|---|
| Medical expenses | $ 8,236.27 |
| Lost earnings to date of trial | $ 19,090.00 |
| Loss of ability to earn money in the future | $215,000.00 |
| Pain, suffering, mental anguish and loss of capacity for enjoyment of life | $150,000.00 |
| TOTAL | $392,326.27 |

As the court has so aptly pointed out in Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705 (5th Cir. 1967), in a case of this kind, the court deals with the inchoate, the intangible, the destroyed potential of tomorrows. The trier of fact cannot be finite, for the future is not finite. Necessarily, there must be dealt with probabilities and necessarily the calculation of damage must involve some speculation. The award here made to this court, at least, as a trier of the fact, is a reasonable amount to be awarded under the evidence presented.

Judgment will be entered in accordance with the foregoing.

---

3. 22 Am.Jur.2d, Damages, § 110, points out the reason many cases refuse to allow the defendant to have the jury instructed that damages for future pain and suffering be reduced to present value—that there is no mathematical basis for its computation because dollars and pain are not equivalents— applied to a per diem argument would prevent other attempts mathematically to quantify damages for pain and suffering.

4. See cases cited in memoranda of the parties.