857 F.2d 1475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Coy A. MORGAN, Plaintiff-Appellee,
v.
The STANLEY WORKS, a foreign corporation, and Stanley
Magic-Door Systems, Inc., a foreign corporation,
Defendants-Appellants.
 No. 87-1865.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1988.
 
 Before ENGEL, Chief Circuit Judge, MILBURN, Circuit Judge, and DAVID D. DOWD, Jr., District Judge*.
 PER CURIAM.
 
 
 1
 Defendants-appellants The Stanley Works and Stanley Magic-Door Systems, Inc. ("defendants") appeal the judgment of the district court denying defendants' motion for judgment notwithstanding the verdict (JNOV), for a new trial, or to alter or amend the jury verdict in favor of plaintiff-appellee Coy A. Morgan ("plaintiff") in this age discrimination and breach of contract action under the Michigan Elliott-Larsen Act, Mich.Comp.Laws Ann. Sec. 37.2101 et seq., and under Michigan employment contract law. No cause of action under federal law has been alleged by plaintiff. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 In this diversity action, plaintiff filed a complaint against defendants on November 7, 1985, alleging that defendants discriminated against plaintiff because of his age in violation of the Michigan Elliott-Larsen Act, Mich.Comp.Laws Ann. Sec. 37.2202(1)(a).[1] Plaintiff was employed with defendants in the parking division of defendants' Madison Heights, Michigan, plant but was terminated on September 30, 1984, when defendants closed the Madison Heights facility and transferred the work from that plant to another plant in Hartford, Connecticut. Thereafter, on August 8, 1986, plaintiff filed an amended complaint adding a second count, alleging that plaintiff's termination was also in breach of an employment contract between the parties. Plaintiff alleged that this oral employment contract was breached by defendants when he was terminated without cause on September 30, 1984.
 
 
 3
 When trial began on April 28, 1987, defendants moved in limine for the exclusion of testimony regarding statements made by plaintiff's former supervisor, James Martin. Defendants sought to exclude these statements on the ground that Martin died in July 1985, and, therefore, under Michigan's dead man's statute, Mich.Comp.Laws Ann. Sec. 600.2166, the statements were inadmissible.[2] The district court, however, admitted this testimony, reasoning that Michigan's dead man's statute had been superseded by the Michigan Rules of Evidence.
 
 
 4
 By special interrogatory, the jury found that there was an implied employment contract providing that plaintiff's employment was terminable only for just cause and, further, that plaintiff was terminated without just cause. The jury also found that defendants discriminated against plaintiff because of his age and, accordingly, awarded the plaintiff $407,100.00 as past and future earnings and benefits lost as a result of defendants' breach of the employment contract and age discrimination, as well as $50,000.00 for mental anxiety and emotional distress on the age discrimination claim. On May 8, 1987, the district court entered judgment on the jury's verdict.
 
 
 5
 On May 20, 1987, defendants moved for JNOV, for a new trial, or to alter and amend the judgment of the district court, but on August 26, 1987, the district court entered its judgment denying defendants' motion. The district court reasoned that as to plaintiff's age claim, plaintiff presented sufficient evidence at trial to raise a factual issue whether he was discriminated against because of his age. As to the implied contract claim, the district court held that the evidence presented was also sufficient to raise a factual issue whether plaintiff was under an implied contract only to be terminated for just cause, and as to whether plaintiff was actually terminated without cause. Finally, the court rejected defendants' argument that it erroneously instructed the jury and also denied defendants' request for reduction of the jury's damage award. The defendants' timely appeal followed.
 
 II.
 A.
 
 6
 "[T]he Sixth Circuit [adheres] to the minority rule that in federal court diversity cases state law governs the standard for granting directed verdict and judgment notwithstanding the verdict motions." Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co., 709 F.2d 427, 430 n. 3 (6th Cir.1983). See also Fitzgerald v. Great Central Ins. Co., 842 F.2d 157, 159 (6th Cir.1988); Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 813 (6th Cir.1982); Warkentien v. Vondracek, 633 F.2d 1, 6 (6th Cir.1980).
 
 
 7
 In Matras v. Amoco Oil Co., 424 Mich. 675, 385 N.W.2d 586 (1986), the Supreme Court of Michigan has explained the standard under Michigan law for a review of a motion for JNOV as follows:
 
 
 8
 In reviewing a trial court's failure to grant a defendant's motion for ... a judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. If reasonable jurors could honestly have reached different conclusions, the motion should have been denied. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury.
 
 
 9
 Id. at ----, 385 N.W.2d at 588 (footnotes omitted). Thus, under Michigan law, this court's review "is limited ... to the question of whether the party opposing the motion offered evidence about which reasonable minds could differ." Dabrowski v. Warner-Lambert Co., 815 F.2d 1076, 1078 (6th Cir.1987) (quoting Perry v. Hazel Park Harness Raceway, 123 Mich.App. 542, 332 N.W.2d 601 (1983)).
 
 B.
 
 10
 Defendants assert that the court erred in denying defendants' motion for JNOV because plaintiff failed to produce sufficient evidence from which a jury could reasonably disagree as to whether age was a determining factor in plaintiff's termination. In Matras, supra, the Supreme Court of Michigan discussed the burden of proof for an age discrimination claimant, concluding that a plaintiff must "present[] evidence 'which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.' " 424 Mich. at ----, 385 N.W.2d at 589 (quoting LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir.1984)). The court noted that an age discrimination plaintiff must only show that age was a factor which affected his termination "even if age was not the sole factor." Id.
 
 
 11
 "[A]ge does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not [to discharge] the plaintiff." Another formulation would be that age is a determining factor when the unlawful adverse action would not have occurred without age discrimination. Alternative expressions of the determining factor concept are "but for causation" or "causation in fact."
 
 
 12
 Id. (quoting Mich. Standard Jury Instructions 2d Sec. 1502) (emphasis supplied and footnotes omitted). The court also explained that where employees are terminated in the context of a work force reduction, the burden of proof requirements articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), are inapplicable.
 
 
 13
 To establish a prima facie case of age discrimination when an employer lays off employees for economic reasons, the courts have required the employee to present sufficient evidence on the ultimate question--whether age was a determining factor in the decision to discharge the older protected employee. Accordingly ... the McDonnell Douglas prima facie case approach folds into the traditional directed verdict/judgment notwithstanding the verdict standard.
 
 
 14
 Matras, 424 Mich. at ----, 385 N.W.2d at 590 (footnote omitted).
 
 
 15
 This court recently analyzed the Matras opinion in Dabrowski, supra, wherein we noted that under the Michigan Act, "[e]vidence that a competent older employee was terminated, and the younger employee was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his workforce because of economic necessity." 815 F.2d at 1079 (quoting Matras, 424 Mich. at ----, 385 N.W.2d at 590). We further noted:
 
 
 16
 The recent decision of the Michigan Supreme Court in Matras teaches that where a company is in the process of restructuring its work force because of economic problems, an unsuccessful older employee who brings suit for age discrimination must show more than a mere age difference between himself and those employees who better weather the storm.
 
 
 17
 Id. at 1080 (emphasis supplied). Thus, under the Michigan Act, an age discrimination plaintiff in a reduction-in-force case must come forward with evidence on the ultimate question of whether age was a reason which made a difference in his termination. "Age discrimination 'may of course be proved under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue ... without resort to any special judicially created presumptions or inferences related to the evidence.' " Matras, 424 Mich. at ----, 385 N.W. at 589 (quoting Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir.1981)).
 
 
 18
 Plaintiff in the present case presented essentially three types of evidence regarding age discrimination. First, evidence was presented as to statements of plaintiff's supervisor regarding the company's efforts to hire a younger individual for plaintiff's position in the Connecticut plant who could make a "long-term commitment" to the company. Plaintiff testified that James Martin, the then-plant supervisor at Madison Heights, called plaintiff into his office and informed him that a final decision had been made to close the Madison Heights plant.[3] Martin told him that he had argued against closing the Madison Heights facility but that such arguments were in vain and that the decision was final.
 
 
 19
 Plaintiff testified that about a week after a formal announcement of the impending closing was made to all employees, Martin called plaintiff into his office to discuss plaintiff's future with the defendants. Plaintiff testified the following colloquy occurred:
 
 
 20
 He said, Coy, when they get up to Connecticut, the people up in Connecticut would like to have someone in your position doing your job, someone who would have a long-term commitment. He said, now, you're 56 years old now. You could retire within six years. And I said, well I could.
 
 
 21
 So he said, it's very expensive to move an employee from here to Connecticut, costs a lot of money. They got to buy your house. It does cost a lot of money. So we would like you to take a position in one of the divisions here in Michigan to stay right where you're at.
 
 
 22
 J.A. at A-181. Although plaintiff was repeatedly assured that other employment would be found for him with defendants, none materialized.
 
 
 23
 The second type of evidence presented by defendants was that younger individuals displaced by the closing of the Madison Heights facility were, in fact, either transferred to the Connecticut plant or rehired in Michigan to positions which plaintiff could have performed. Finally, plaintiff presented evidence that his position at the Madison Heights facility was filled at the Connecticut plant by a younger individual (Stephen Swain, age thirty-nine at the time of trial).
 
 
 24
 Drawing all inferences in plaintiff's favor, we find the above evidence sufficient to support the jury's verdict. While the evidence may not appear overwhelming, we note that our review is limited to determining whether "reasonable jurors could disagree" on the basis of the evidence presented. Matras, 424 Mich. at ----, 385 N.W.2d at 588. We hold that they could and, accordingly, affirm the district court's judgment in this regard.
 
 C.
 
 25
 Defendants also argue that the district court erred in denying its motion for JNOV as the record fails to support the jury's finding of an implied contract terminable only for just cause or that no just cause existed. Defendants rely on Toussaint v. Blue Cross and Blue Shield of Michigan, 408 Mich. 578, 292 N.W.2d 880 (1980), wherein the Supreme Court of Michigan recognized that in certain instances an implied contract based on oral representations and statements in an employee manual might support an employment contract, although indefinite in term. The court stated:
 
 
 26
 When a prospective employee inquires about job security and the employer agrees that the employee shall be employed as long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will without assigning cause and may discharge only for cause (good or just cause). The result is that the employee, if discharged without good or just cause, may maintain an action for wrongful discharge.
 
 
 27
 Toussaint, 408 Mich. at ----, 292 N.W.2d at 890. Under Toussaint, an employee's mere subjective expectations of continued employment are insufficient to create an implied contract, Henry v. Hospital and Health Servs. Credit Union, 164 Mich.App. 90, 416 N.W.2d 338, 340 (1987), as the employee must establish conduct on the part of an employer which reasonably creates an expectation of continued employment. See Dzierwa v. Michigan Oil Co., 152 Mich.App. 281, 393 N.W.2d 610 (1986); Schwartz v. Michigan Sugar Co., 106 Mich.App. 471, 308 N.W.2d 459 (1981).
 
 
 28
 Under Toussaint, employment contracts have been upheld where an employee was told he would employed with the company "as long as I did my job," Toussaint v. Blue Cross and Blue Shield of Michigan, 408 Mich. 578, ----, 292 N.W.2d 880, 884; where an employee was told that "[h]e was "doing the job" he would not be discharged, Ebling v. Masco Corp., 408 Mich. 578, ----, 292 N.W.2d 880, 884 (companion case to Toussaint); where an employee was told that "[h]e would never have to worry" so long as he did his job properly, Cowdrey v. A.T. Transp., 144 Mich.App. 617, 619, 367 N.W.2d 433, 434 (1985); where an employee was told "that he would have a lifetime job so long as he did not steal," Bullock v. Automobile Club of Michigan, 146 Mich.App. 711, 715, 381 N.W.2d 793, 794 (1985), appeal granted, June 24, 1986; and where an employee was told she would be employed so long as she "did a good job," Hetes v. Schefman and Miller Law Office, 152 Mich.App. 117, 393 N.W.2d 577, 578 (1986).
 
 
 29
 Plaintiff testified that at the time of his hiring, he was assured that he would be retained by defendants provided he performed adequately until retirement age. J.A. at A-159. Plaintiff further testified that it was his belief that defendants needed "a good reason" to fire an employee. J.A. at A-177. Plaintiff also testified that this belief was based on assurances to that effect by defendants. "Well, they told me often, as long as your work's satisfactory, which it is, they told me, you're certainly not going to get fired." J.A. at A-177.
 
 
 30
 We find that the above evidence is sufficient to allow a claim of implied employment contract to go to the jury. Thus, we hold that defendants' motion for JNOV was properly denied, as evidence was presented from which a jury could conclude that plaintiff had a legitimate expectation, grounded in the employer's statements, that he would be terminated only for cause.[4] We also conclude that a jury could reasonably find, based on the evidence outlined above, that plaintiff was terminated without just cause; viz., because of his age.
 
 D.
 
 31
 Defendants also argue that plaintiff should have been prohibited from testifying as to statements allegedly made by his supervisor, Martin, as Martin was dead at the time of trial, and, therefore, such statements were inadmissible under the Michigan dead man's statute. The district court, however, ruled that the Michigan dead man's statute was superseded by Michigan Rule of Evidence 601, which provides that "[u]nless the court finds after questioning a person that he does not have sufficient physical or mental capacity ... to testify truthfully and understandably, every person is competent to be a witness...." Mich.R.Evid. 601.
 
 
 32
 The Michigan courts considering the issue of whether the dead man's statute remains viable after adoption of Rule 601 have concluded that it was superseded by Rule 601. In re Backofen, 157 Mich.App. 795, ----, 404 N.W.2d 675, 677 (1987); In re Chiodo, 123 Mich.App. 254, 333 N.W.2d 241 (1983); Mason v. Chesapeake & Ohio Ry., 110 Mich.App. 76, 312 N.W.2d 167 (1981); Dahn v. Sheets, 104 Mich.App. 584, ----, 305 N.W.2d 547, 549 (1981) ("[T]he dead man's statute has been 'impliedly abrogated' by the Supreme Court's adoption of MRE 601...."), leave to appeal denied, 412 Mich. 928 (1982); James v. Dixon, 95 Mich.App. 527, 291 N.W.2d 106 (1980). See also Turbyfill v. International Harvestor Co., 486 F.Supp. 232, 236 (E.D.Mich.1980).
 
 
 33
 Defendants argue in the face of these Michigan appellate court decisions that the Michigan Supreme Court's constitutional authority to adopt rules of practice under Article 5, section 5, of the Michigan Constitution may not be used as authority for the court to override Michigan's substantive statutes. Yet whatever might be said as to the merits of defendants' arguments in this regard, we conclude that we are bound by the decisions cited above finding the dead man's statute superseded by the Michigan evidence rule. It must be remembered that this court, sitting in diversity jurisdiction, is required to apply the law as found by the highest state court considering the issue before us. See Wieczorek v. Volkswagenwerk, A.G., 731 F.2d 309, 310 (6th Cir.1984) ("[T]he law of Michigan is controlled by a decision of the Michigan Court of Appeals until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise.").
 
 
 34
 Moreover, this court generally defers to the interpretation given to state law by a federal district court sitting in a state. See Insurance Co. of N. Am. v. Federated Mut. Ins. Co., 518 F.2d 101, 106 n. 3 (6th Cir.1975) ("[I]f a federal district judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse, even though it may think the law should be otherwise.") (quoting Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924, 929 (6th Cir.1960). See Bagwell v. Canal Ins. Co., 663 F.2d 710, 712 (6th Cir.1981) ("When this court is reviewing a district judge's interpretation of state law we give considerable weight to the interpretation of the judge." ); see also Wright v. Holbrook, 794 F.2d 1152, 1155-56 (6th Cir.1986); Martin v. Joseph Harris Co., 767 F.2d 296, 299 (6th Cir.1985). Thus, we affirm the ruling of the district court in allowing the plaintiff to testify as to the statements allegedly made to him by his supervisor, Martin.
 
 E.
 
 35
 Finally, defendants argue that plaintiff's damage award was excessive and unsupported by the evidence presented. Accordingly, defendants request that we reverse the district court's judgment denying defendants' request to reduce the damage award.
 
 
 36
 The district court, in reviewing defendants' request for reduction in damages, noted:
 
 
 37
 Defendants set forth in their brief various theories as to how the jury must have arrived at a verdict of $407,100.00 for loss of past and future earnings and benefits and $50,000.00 for mental anxiety and emotional distress. The Court accurately instructed the jury to reduce future damages to present value as well as to offset an award by amounts Plaintiff earned and what Plaintiff could have earned with reasonable efforts. The Court ... concludes that the damages are reasonable [sic] based on the evidence and are not wholly speculative. Plaintiff submitted evidence of earnings, pension benefits and saving plans in addition to evidence of emotional harm. An evaluation of the evidence leads the Court to conclude that an award of $407,100.00 and $50,000.00 is neither "shocking" nor does it manifest "plain injustice."
 
 
 38
 J.A. at A-55 (quoting Rodgers v. Fisher Body, 739 F.2d 1102, 1106 (6th Cir.1984), cert. denied, 470 U.S. 1054 (1985)).
 
 
 39
 This court must affirm a district court's decision allowing a damages award to stand unless "the award is so high as to shock the judicial conscience and constitutes a denial of justice." Rodgers, 739 F.2d at 1109 (quoting Zarcone v. Perry, 572 F.2d 52 (2d Cir.1978)). Thus, this court should leave the verdict as it stands unless it reaches into the realm of speculation. Id. at 1107. A damage award should be reversed only where such award "unquestionably exceeds any reasonable expectation which plaintiff may have had under the circumstances." Katch v. Speidel, 746 F.2d 1136, 1143 (6th Cir.1984).
 
 
 40
 Moreover, "[i]t is settled law in this Circuit that an award of future damages must be reduced to present value in order to take into account the earning power of money." Rodgers, 739 F.2d at 1106 (citing Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485 (1916)). See also H. K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115 (6th Cir.1976). However, "[s]ome consideration of probabilities [as to future increases in income and inflation] is inevitable in any fair award of damages. The court's role is to keep such extrapolations within reasonable bounds and insure that they conform to the evidence." Bach v. Penn Central Transp. Co., 502 F.2d 1117, 1122 (6th Cir.1974).
 
 
 41
 After careful review of the evidence presented in the present case in light of the court's instructions to the jury regarding damages, we conclude that the damage award was not so outlandish as to "shock the conscience" or "unquestionably exceed any reasonable expectation" which the plaintiff may have had. Here, evidence was presented that at the time of his discharge, plaintiff annually earned approximately $27,000.00, that plaintiff received annual merit wage increases, and that plaintiff accrued other benefits from defendants. Thus, we affirm the judgment of the district court.[5]
 
 III.
 
 42
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 43
 DAVID D. DOWD, Jr., District Judge, dissenting.
 
 
 44
 I respectfully dissent in part and concur in part. I concur to the extent that the verdict for the plaintiff on the issue of liability is affirmed. I also concur in the judgment to the extent that the plaintiff was awarded $50,000 in damages for mental anxiety and emotional distress. I dissent to the extent that the judgment grants the plaintiff $407,100 for loss of past and future earnings and benefits.
 
 
 45
 The plaintiff was fifty-six years old at the time he was terminated. He testified that he expected to retire from the employ of the defendant at age sixty-five. (Tr. Vol. II, p. 72, lines 24-25, Appendix p. 170). The award of $407,100 for his past and future earnings permits the plaintiff to invest that sum of money at a reasonable rate of interest (eight percent) and enjoy an annual income substantially in excess of his annual salary of $27,000 when terminated while retaining the principal sum of $407,100 as well as enjoying the use of his severance pay from the defendant, his pension benefits and the monies earned in other employment subsequent to his termination.
 
 
 46
 The district court and my colleagues declare that such a result is neither "shocking" nor does it manifest "plain injustice."
 
 
 47
 I am unable to make such a declaration. I would, as in Rodgers v. Fisher Body, 739 F.2d 1102 (6th Cir.1984), cert. denied, 470 U.S. 1054 (1985), affirm the district court's judgment on the issue of liability; affirm that part of the judgement awarding $50,000 in damages for mental anxiety and emotional distress; reverse the balance of the judgment as to damages and remand for trial solely on the issue of damages for loss of past and future earnings and benefits.
 
 
 
 *
 Honorable David D. Dowd, Jr., Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The Elliott-Larsen Act provides in relevant part:
 An employer shall not ... [f]ail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... age....
 Mich.Comp.Laws Ann. Sec. 37.2202(1)(a) (West 1985).
 
 
 [2]
 The Michigan dead man's statute provides:
 In an action by or against a person incapable of testifying, a party's own testimony shall not be admissible as to any matter which, if true, must have been equally within the knowledge of the person incapable of testifying, unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim.
 Mich.Comp.Laws Ann. Sec. 600.2166(1) (West 1986).
 
 
 [3]
 Although defendants argue that Martin was not the "decision-maker" in the challenged employment decision, the district court found that Martin possessed considerable influence over who would be offered positions when the Madison Heights facility closed. Moreover, defendants indicated in response to plaintiff's interrogatory that Martin was the individual who decided to terminate plaintiff's employment. Thus, we reject this argument
 
 
 [4]
 Defendants also argue that plaintiff's Toussaint theory should not have been submitted to the jury as plaintiff's complaint alleges only that "[a]t various times during [plaintiff's] employment with Defendant, [plaintiff] was informed and led to believe that a contract existed between the parties pursuant to which it was agreed that if [plaintiff's] position with Defendants were eliminated, he would be transferred to an equivalent position...." J.A. at A-17. We, however, conclude the district court acted properly, as plaintiff's implied contract claim, even if not explicitly stated in the complaint, is implicit in the above language, was raised by the defendants in their motion for summary judgment, and was incorporated into the parties' joint pretrial order, signed and submitted by both plaintiff and defendants
 
 
 [5]
 The additional arguments of defendants may be quickly rejected. First, defendants assert that the district court erred in not permitting defendants to cross-examine plaintiff regarding the filing of plaintiff's amended complaint. Even assuming the court erred in this connection, we find such error harmless. Fed.R.Evid. 103(a)
 Second, defendants argue that the court erroneously permitted plaintiff's counsel, during closing argument, to use a chart summarizing the evidence regarding damages. This argument is without merit as: (1) defendants' counsel failed to properly object to the chart, merely stating, "I just wonder whether it's appropriate," and (2) the district court complied fully with this court's holding in Gomez v. Great Lakes Steel, 803 F.2d 250, 257-58 (6th Cir.1986), by not admitting the chart into evidence and instructing the jury of its purpose. Finally, after careful review of the record in light of the relevant legal principles under Michigan law, we find defendants' remaining allegations of error to be without merit.